543 P.2d 454

In the Matter of the APPEAL IN MARICOPA COUNTY, JUVENILE ACTION NO. JS–734.

No. 1 CA–JUV 32.

Court of Appeals of Arizona, Division 1, Department B.

Dec. 9, 1975.

Rehearing Denied Jan. 9, 1976.

Review Denied Feb. 10, 1976.

**334**

I. Harrison Levy, Phoenix, for appellant.

Richard A. Nulle, Scottsdale, for appellees.

## OPINION

HAIRE, Chief Judge.

On this appeal from an order entered by the Maricopa County Juvenile Court terminating the parent-child relationship between a mother and her eleven year old son, the mother contends that the court lacked *in personam* jurisdiction over her, that such jurisdiction was essential to the validity of the proceedings, and that therefore the court should have dismissed the petition for termination. In the alternative, the mother contends that the evidence was insufficient to support the court's order terminating the relationship.

The background facts are as follows. In 1962, the mother and the father of the child, although unmarried, were cohabiting in Geneva, Switzerland. They were both English citizens. The mother became pregnant, and about two months later returned to her parents' home in London, England for the purpose of giving birth to the child. Shortly thereafter, she called the father from London and stated that she wanted to go to Stockholm for an abortion, and asked that he send her funds for that purpose. After determining that she was insistent on having the abortion,

the father sent her 1000 pounds (approximately $2800 at that time), and assumed that she had proceeded as she had indicated.

About two years later, when the father was in London, a mutual friend of the father and mother told the father that the mother had not had the abortion, but rather had given birth to the child. He then went to see the mother and was told by her that she "had given the child to her parents". The father told her that he would be willing to be responsible for the child from that point on and do whatever was proper for the child. His offer was refused, but he was allowed to visit the child at the grandparents' home, with the strict understanding that he was not to tell the child of his parental relationship, otherwise he would not be allowed to see the child again.

The child grew up in his grandparents' household, believing that they were his parents and that his mother was his sister. While his mother also lived in London, she had little contact with him, but would visit her parents about every three weeks or so. She never sent any letters or gave any gifts to her son. The child did not know the true identity of his father, but considered him to be a close friend of the family or a cousin. Prior to the time the father moved to Arizona, the child would spend some nights and weekends with him, and "go out to places with him". After the father moved to Arizona, he maintained a close relationship with the child, sending him letters, gifts, money, and telephoning him from time to time.

In the summer of 1971 the father made arrangements for the child, then eight years old, to spend the summer vacation with him in Scottsdale, Arizona. These arrangements were made with the grandparents. The mother knew about this visit, but was not consulted directly by the father, inasmuch as all decisions concerning the child had in the past been made by the grandparents. At that time the child still thought that his grandparents were his true parents. In making arrangements for this trip, the father, for the first time, discovered that the child's birth certificate listed his father as "unknown", rather than naming him as the father.

After the summer of 1971, the child returned to England, again to reside with his purported parents (actually grandparents). In the summer of the following year, 1972, the father asked the grandparents if the child could come to Arizona to reside permanently with him. They consented, and the child has resided in Arizona with his father since 1972. The record does not reflect whether the mother was consulted by the grandparents prior to the child's departure for Arizona for the 1972 trip, or whether she had any objections thereto.

In August of 1972, after the child came to Arizona for permanent residence, the father told him that he was his father and also that the child's supposed sister was his mother. About two years later, in May of 1974, the present proceedings were initiated by the father and his wife, seeking to terminate the parental rights of the mother on the ground that she had made no effort to maintain a parent-child relationship and had therefore abandoned him. Their purpose was to go forward with adoption proceedings once the termination was granted.

## THE COURTS JURISDICTION— STATUTORY REQUIREMENTS

The mother initially contends that the Arizona statutes, separate and apart from constitutional considerations, require that the Court obtain *in personam* jurisdiction over her prior to a termination of her parental rights.

A.R.S. § 8–533 provides in part:

"Any person or agency that has a legitimate interest in the welfare of a child, including, but not limited to, a relative, foster parent, physician, department of welfare, or a private licensed child welfare agency, may file a petition for the termination of the parent-child

relationship if one or more of the following grounds exist:

"1. That the parent has abandoned the child or that the parent has made no effort to maintain a parental relationship with the child."

A.R.S. § 8–535 requires that notice be given as follows:

"A. After the petition has been filed, the court shall set a time and place for hearing, and shall cause notice thereof to be given to . . . the parents of the child . . . ."

"B. Notice shall be given by personal service when possible, or by any other method authorized in the service of process in civil actions."

Notice of the petition and time and place for hearing was given to the mother by registered mail, in accordance with the provisions of Rule 4(e)(2), Rules of Civil Procedure, 16 A.R.S., and an affidavit and return receipt evidencing such service was filed with the court. The mother then contacted a firm of London solicitors who made known to petitioners' counsel and the Juvenile Court the mother's desire to contest the proceedings, and further requested that the Juvenile Court appoint Arizona counsel for the mother in accordance with A.R.S. § 8–225.[1] The court did appoint Arizona counsel for the mother, and at the time set for hearing, appointed counsel made a "special appearance" to present argument on a motion to dismiss for lack of jurisdiction over the person of the mother.[2] The trial court denied the motion to dismiss, and, upon stipulation by petitioners' counsel that further participation by the mother's counsel would not prejudice the mother's jurisdictional claim, the hearing proceeded on the merits, resulting in the entry of an order by the court finding that

"the natural mother, has not within the meaning of A.R.S. § 8–533, made an effort to maintain a parental relationship with [the child]." This was followed by an order that the "parent-child relationship heretofore existing between . . . the natural mother, and [the child], is hereby terminated."

▮ Although appellees contend otherwise, we agree with the appellant-mother that service of the petition and notice of hearing in accordance with Rule 4(e)(2), Rules of Civil Procedure, could not, under the facts of this case, constitute personal service so as to give the trial court *in personam* jurisdiction over the mother. She had never been in this jurisdiction, had no contacts with it, and, notwithstanding the child's presence here and appellees' tenuous arguments in that regard, had not "caused an event to occur in this state out of which the claim . . . arose." *See generally, Houghton v. Piper Aircraft Corporation,* 112 Ariz. 365, 542 P.2d 24 (filed November 6, 1975); *Powder Horn Nursery, Inc. v. Soil and Plant Laboratory, Inc.,* 20 Ariz.App. 517, 514 P.2d 270 (1973). *Cf. Bebeau v. Berger,* 22 Ariz. 522, 529 P.2d 234 (1975).

Having concluded that the trial court lacked *in personam* jurisdiction over the mother, we are faced with the problem of determining whether the court could proceed with the termination of the parent-child relationship in the absence of *in personam* jurisdiction over the parent whose rights were being terminated. The problem is twofold. First, whether the statutes purport to give the court the authority to proceed in the absence of *in personam* jurisdiction, and, second, if they do purport to give such authority to the court, can this constitutionally be done?

---

1. A.R.S. § 8–225 provides, in part, as follows:

"A. In all proceedings under this chapter the juvenile court shall upon request of a child, parent or guardian found to be indigent, appoint an attorney to represent such person or persons."

2. Inasmuch as "special appearances" are no longer necessary or allowed under Arizona practice, the trial court treated the "special appearance" as a Rule 12(b)(2) motion to dismiss for lack of jurisdiction over the person.

Concerning the first question, appellant cites the language of A.R.S. § 8–535B requiring that "Notice shall be given by personal service when possible, or by any other method authorized in the service of process in civil actions." Appellant's counsel argues that the intent of the legislature in using this language was not merely to specify the manner of giving notice in the best manner possible so as to comply with due process dictates of decisions such as *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), but, in addition, the intent was to limit the court's jurisdiction to those circumstances in which it could acquire *in personam* jurisdiction over a nonconsenting parent. Appellant thus argues that notice effective to give *in personam* jurisdiction could not be had under Rule 4(e)(2), unless the absent parent had caused an event to occur in this state out of which the claim arose. In an attempt to bolster this argument, appellant contrasts the language of A.R.S. § 8–535B (quoted above) with the language of A.R.S. § 8–106C,[3] which, in appellant's opinion, does not require *in personam* jurisdiction so long as notice and a reasonable opportunity to be heard is afforded to the absent parent.

We find appellant's arguments in this regard unpersuasive. It is true that A.R.S. § 8–106C, dealing with adoption proceedings, merely provides for a hearing "on actual notice to all persons adversely affected". However, reading further in Arizona's adoption code we find A.R.S. § 8–111

which specifies how the notice required in § 8–106C shall be given.[4] The service of notice requirement in § 8–111 is essentially identical to that specified in § 8–535. Thus no inference can be drawn from the language used in § 8–106C that by the language used in § 8–535 the legislature evidenced an intent to require *in personam* jurisdiction over the absent parent in termination proceedings, as opposed to a lesser requirement in adoption proceedings.

Considering now the service of notice language actually used in § 8–535B, it is important to note that the giving of notice by personal service is required "when possible". If not possible, notice may be given "by any other method authorized in the service of process in civil actions." From what we have previously stated, it is apparent that "personal service" in the technical sense was not possible here. Therefore we must determine whether the service utilized was another "method authorized in the service of process in civil actions."

Rule 4(e)(1) provides that "When a defendant is a nonresident of the state . . . service may be made in accordance with Sections 4(e)(2) or 4(e)(3) of this Rule." Rule 4(e)(3) provides that "Where by law personal service is not required, and a person is subject to service under Section 4(e)(1), such service may be made by either of the methods set forth in Section 4(e)(2) or by publication." Here the appellant-mother was a non-resident of the state and thus was subject to the provisions of Section 4(e)(1). Looking next to Rule 4(e)(3), the applicable statute (§

---

3. A.R.S. § 8–106C provides:
"C. Notwithstanding the provisions of § 8–533 the court may waive the requirement of the consent of any person required to give consent when *after a hearing on actual notice to all persons adversely affected* the court determines that the interests of the child will be promoted thereby. In such case, the court shall make written findings of all facts upon which its order is founded. (Emphasis added).

4. A.R.S. § 8–111 reads in part as follows:
"After a petition to adopt has been filed, the clerk of the superior court shall set a time and place for hearing by the court *and shall cause notice thereof to be given by personal service or by any other method authorized for the service of process in civil actions* to:
&ast; &ast; &ast; &ast; &ast;
"5. Any person or agency required to give consent by § 8–106 unless such consent has been filed prior to the court's setting of the hearing." (Emphasis added).

8–535B) requires personal service only "when possible", therefore insofar as statutory requirements are concerned, personal service was not required. The two conditions precedent having been met, Rule 4(e)(3) authorized service to be made by registered mail under 4(e)(2).

■ In summary, when considered in context with the other provisions of Rule 4, the utilization of the methods of service provided for in Rule 4(e)(2), can result in *in personam* jurisdiction when the defendant "has caused an event to occur in this state out of which the claim . . . arose." On the other hand, if the defendant has not caused such an event to occur in this state, the utilization of the methods of service provided in Rule 4(e)(2) may still be effective for *in rem* or *quasi in rem* purposes, even though not sufficient in and of themselves to confer *in personam* jurisdiction.

■ From the foregoing we conclude that A.R.S. § 8–535B does not by its terms require that the Juvenile Court obtain *in personam* jurisdiction, and that here service of the notice was properly made under a method set forth in Rule 4(e)(2).

## THE TRIAL COURT'S JURISDIC-
## TION—CONSTITUTIONAL
## REQUIREMENTS

■ The appellant-mother places great reliance upon *May v. Anderson,* 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) in support of her contention that Arizona cannot constitutionally terminate her parent-child relationship with her son in the absence of *in personam* jurisdiction over her. In that case the United States Supreme Court held that Ohio was not required to give full faith and credit to a Wisconsin decree awarding custody of children to their father when the decree had been obtained by the father in an *ex parte* divorce action in a Wisconsin court which had no *in personam* jurisdiction over the mother. However, we are not cited to any decision applying this same prin-

ciple to adoption or termination proceedings involving a non-consenting parent, and we perceive substantial reasons why such a rule should not be so applied.

In custody disputes, the controversy is primarily between the divorced parents, with the state having a very limited interest in the outcome. On the other hand, in adoption or termination proceedings, even where initiated by private parties, the state in its capacity as *parens patriae* has a very substantial interest in the proceeding. Generally, the right to terminate is severely restricted to those instances where, in the interest of the future well-being of the child, the state's intrusion into this fundamental relationship is justified and required. Such an intrusion represents a legitimate interest, well within the power of the state to implement. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Fladung v. Sanford,* 51 Ariz. 211, 75 P.2d 685 (1938). We recognize that in *May v. Anderson* the court characterized the mother's right to custody as a right "far more precious to [her] than property rights" and, as a "personal right entitled to at least as much protection as her rights to alimony." We agree. However, in our opinion, when the issue is primarily between the state in its *parens patriae* capacity and an absent non-consenting spouse, the state is justified in providing for effective termination proceedings, even in the absence of *in personam* jurisdiction over a non-consenting parent. *In re Soderberg,* 26 Ariz. 404, 226 P. 210 (1924).

■ Viewed in the above light, the relationship of parent and child is a status in which the state has a preeminent interest. While the parent's interest in this status cannot be considered as though it were a property right, nevertheless it may not be changed without due process and compliance with the statutes involved. *Anguis v. Superior Court,* 6 Ariz.App. 68, 429 P.2d 702 (1967); *Stearns v. Allen,* 183 Mass. 404, 67 N.E. 349 (1903). This due process requirement is best stated in the *Mullane v.*

*Central Hanover Bank & Trust Co., supra,* as follows:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." 70 S.Ct. at 657.

It cannot be seriously argued that Arizona's statute or the notice given herein was deficient in this regard.

■ One further matter must be discussed before leaving the question of the exercise by the Arizona court of its jurisdiction in this matter. It is unquestioned that A.R.S. § 8–532A gives the Juvenile Court subject matter jurisdiction of petitions to terminate "when the child involved is present in the state." Notwithstanding the existence of subject matter jurisdiction because of the presence of the child in this state, the Arizona courts have, for policy reasons, refused to exercise such jurisdiction in certain instances where to do so would in effect condone "kidnapping" or in some manner tend to interfere with the free exercise of visitation rights. *See Graton v. Graton,* 24 Ariz.App. 194, 537 P.2d 31 (1975) for a discussion of the prior Arizona decisions in this area. Suffice it to say that we see nothing in the fact situation before this Court which would justify abstaining from the exercise of jurisdiction here. At the time of the hearing, the child had been living in Arizona with his father for in excess of two years, with the full consent of the only "parents" he had ever known prior to that time.

We therefore hold that the trial court did not err in denying the motion to dismiss for lack of jurisdiction, and in proceeding with the termination proceedings, notwithstanding the lack of *in personam* jurisdiction over the appellant.

## THE SUFFICIENCY OF THE EVIDENCE

Before discussing the question of the sufficiency of the evidence, as a preliminary matter the appellee contends that by participating in the proceedings after denial of her jurisdictional defense, appellant waived any right to question the sufficiency of the evidence to support the termination order. We disagree. The trial court treated appellant's "special appearance" as a Rule 12(b)(2) motion to dismiss for lack of jurisdiction over the person. Rule 12(b) provides that "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." In our opinion this non-waiver provision allows a party who has timely and unsuccessfully raised a jurisdictional defense to proceed to trial on the merits without by so doing waiving the right to raise the jurisdictional defense on appeal. *See* 5 Wright & Miller, Federal Practice and Procedure: Civil § 1351.

■ We have previously set forth in some detail the evidence presented to the trial judge on the termination question. In addition, and not previously discussed, the trial judge had available to him a social study report made after investigation pursuant to A.R.S. § 8–536. After a thorough consideration of the record, we find the evidence sufficient to support the trial judge's finding that the appellant-mother had not within the meaning of A.R.S. § 8–533, made an effort to maintain a parental relationship with the child. It makes no difference whether this statutory basis for termination is considered as a ground separate and apart from abandonment, as it evidently was considered by the trial judge, or as a further specification of what constitutes abandonment, as is argued by appellant's counsel. The trial judge's statement in the transcript that he did not find abandonment, does not in any way detract from his express finding of statutory

grounds as quoted above in his formal written order of termination.

The order is affirmed.

JACOBSON, P. J., and EUBANK, J., concur.