563 P.2d 885

In the Matter of the Severance of Valerie DURYEA, Shirley Joe, and Stephen Lupe, persons under the age of 18 years.

Gary J. WOODS and Virginia N. Woods, Petitioners,

v.

The Honorable John P. COLLINS, Judge of the Superior Court in and for the County of Pima and Billie Duryea and Shirley Duryea, husband and wife, parents of the minor child, Valerie Duryea, William Joe, Sr., natural father of the minor child Shirley Joe, Carol Linda Lupe and Nathaniel Narcisco, natural parents of the minor child Stephen Lupe, Respondents.

No. 13050–PR.

Supreme Court of Arizona, En Banc.

April 12, 1977.

Leighton H. Rockafellow, Tucson, for petitioners.

Kathleen Rihr, Phoenix, for respondent Natural Parents.

Feldman, Wolin & Lahr, by Philip S. Abromowitz, Tucson, for respondent Minor Children.

HAYS, Justice.

Three petitions for termination of the parent-child relationship, pursuant to A.R.S. § 8–531 et seq., were filed by Virginia and Gary Woods, hereinafter petitioners. They were consolidated by the Pima County Juvenile Court hearing the action. The children involved were Stephen Lupe, Valerie Duryea and Shirley Joe, all American Indian children enrolled with the White Mountain Apache Tribe. The natural parents of the children, hereinafter respondents, also all White Mountain Apaches, moved to dismiss the petitions on the basis that the state juvenile court had no subject matter jurisdiction.[1]

The juvenile court did dismiss the petitions in an order which found that "the Tribal Court of the White Mountain Apache Tribe of White River, Arizona, has concurrent if not the only jurisdiction in this matter." The Arizona Court of Appeals issued an order denying a petition for special action. We granted a petition for review of that order.

The uncontroverted testimony before the juvenile court was as follows.

---

1. There is no question of personal jurisdiction over respondents in this matter. They appeared in court, with counsel, and specifically waived any defect in service under *Francisco v.* *State of Arizona,* 113 Ariz. 427, 556 P.2d 1 (1976). The record clearly reveals that at court and in the presence of all the respondents, their counsel accepted service of process.

Stephen Lupe was placed, by his unwed mother, with Virginia and Gary Woods, when he was six weeks old, in May, 1972. His mother, who wished to return to school, brought him off the reservation to Lakeside, Arizona, where the petitioners lived. At the time of the hearing, Stephen was four and one-half years old, had lived continuously with the petitioners, and his mother had seen him only once during that time. Petitioners had even named the child Stephen.

The child Valerie was placed with the petitioners in September, 1969, by an elderly missionary woman named McGee. It is controverted as to whether or not the parents of Valerie later gave the petitioners their permission to retain Valerie. It is uncontested, however, that the parents were not living on the reservation when they gave Valerie to Sister McGee in Showlow, Arizona, that they became aware, shortly thereafter, that Valerie was with the petitioners and that they had no further contact with this child until three and one-half years later, when the petitioners brought a guardianship proceeding in Navajo County regarding Valerie, wherein they were awarded temporary custody. Valerie's only contact with the Indian reservation was visits to the medical clinic there. She had resided with the petitioners for approximately seven years at the time of the juvenile court hearing and had little, if any, contact with her natural parents.

Shirley Joe was placed with the petitioners by a worker from a social agency in Showlow, Arizona (again off the reservation), when both her parents were jailed there. A few months after they were released, they visited the child in Lakeside, where petitioners were then residing. The parents did take Shirley back with them for a short while, but returned her to petitioners in January, 1971. The child was delivered to the petitioners in Showlow, Arizona, where the parents were then residing. Shirley had resided with petitioners for approximately six years at the time of the hearing. All three children had subse-

quently moved to Tucson, Arizona, with petitioners.

A.R.S. § 8–532 provides for the jurisdiction of Arizona courts in these matters:

"A. The juvenile court shall have exclusive original jurisdiction over petitions to terminate the parent-child relationship when the child involved is present in the state."

It surely cannot be argued that the children involved herein are not present in the state. The real question is whether the Arizona courts must refrain from exercising subject matter jurisdiction when the subject is an American Indian child, possibly abandoned off the reservation for a number of years by an American Indian parent. We think not.

"Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State. [cites omitted]." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 149–150, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973).

In a case very similar to this one, the Supreme Court of Montana held its state courts to have jurisdiction to terminate a parent's custody of an Indian child who had been abandoned off the Indian reservation, which abandonment continued for over one year. The mother had remained, during this time, "in the sanctuary of the reservation, oblivious to the needs of her child." *In re Cantrell*, 159 Mont. 66, 71, 495 P.2d 179, 182 (1972).

The New Mexico courts, too, have recently taken jurisdiction of an adoption proceeding where the subject child was an Indian. In *In re Adoption of Doe*, 89 N.M. 606, 555 P.2d 906 (1976), the mother of the child, a Navajo, had placed the child voluntarily with an adoption agency. The petitioners were non-Indians and were challenged by the child's father, grandfather and, as amicus curiae, the Association on American Indian Affairs, Inc. That association challenged the New Mexico court's jurisdiction. The Court replied:

"The Association claims that the Navajo Nation has the exclusive jurisdiction to determine the permanent custody of its minor members. Decisions concerning such a jurisdictional claim are ones where the child was a resident of or domiciled on an Indian reservation. *Fisher v. District Court,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976); *Wisconsin Potowatomies, Etc. v. Houston,* 393 F.Supp. 719 (D.C.Mich.1973); *Wakefield v. Little Light,* 276 Md. 333, 347 A.2d 228 (1975). This record does not show that the child either resided or was domiciled on the Navajo Reservation. . . . Whatever concurrent jurisdiction the courts of the Navajo Nation might have, New Mexico had an interest in the welfare of a child who was in New Mexico and not within the boundaries of the reservation. [cites omitted]." *Adoption of Doe,* 89 N.M. at 616, 555 P.2d at 916–17.

Likewise, the children herein were not domiciled on the reservation. They had been voluntarily and purposefully removed therefrom and placed with petitioners, off the reservation. The conduct of the parents in leaving the children, and in abandoning them, if such is the case,[2] took place completely off the reservation.

Most persuasive of all the authority on this subject is *De Coteau v. District County Court for the Tenth Judicial District,* 420 U.S. 425, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975), *reh. denied,* 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975). In that recent case, the United States Supreme Court approved of the South Dakota state courts taking jurisdiction of the adoption proceedings of two Indian children. One had been placed by the mother for adoption; the other had been separated from her, in state court, through neglect and dependency proceedings. The mother challenged the state court's jurisdiction of the adoption proceedings through a *habeas corpus* action in state court.

The *predominant* issue in *De Coteau* was actually whether the Lake Traverse Indian Reservation had been terminated by an act of Congress in 1891. Finding that it had been, however, and that therefore the conduct of the children's mother had taken place off land allotted to her tribe, the Supreme Court found that the South Dakota courts had properly asserted jurisdiction over the adoption proceedings.

In light of the above-cited cases, especially *De Coteau,* and in light of the State of Arizona's very substantial interest in all the children within its boundaries, *In re Appeal in Maricopa County, Juvenile Action, No. JS–734,* 25 Ariz.App. 333, 543 P.2d 454 (1975), the Juvenile Court erred in failing to take jurisdiction in this proceeding.

Reversed and remanded with orders to proceed accordingly.

CAMERON, C. J., STRUCKMEYER, V. C. J, and HOLOHAN, J., concurring.

GORDON, Justice (specially concurring):

I concur in the result reached by the majority. I cannot, however, concur in their reasoning because I read the majority opinion to say there is no jurisdiction concurrent in the White Mountain Apache Tribal Court. A holding which necessarily implies exclusive jurisdiction in the state courts would be contrary to established case law and, in fact, is not supported by the decisions cited by the majority.

I would reverse and remand in the particular circumstances of this case because I believe the trial court's summary denial of jurisdiction was an abuse of discretion. I would require the trial court on remand either to accept jurisdiction or to articulate grounds for denying jurisdiction.

There is concurrent jurisdiction in the tribal and state courts when a petition for severance and/or adoption is brought and the parties include non-Indians, enrolled tribal members, and reservation Indian residents (as here). I recognize a jurisdictional determination in these circumstances will frequently necessitate a partial review of the case on its merits. Where facts concerning severance are not in dispute and no colorable issue is raised regarding "whether

2. We express no opinion whatsoever as to the merits of the proceeding.

the state action infringed on the right of reservation Indians to make their own laws and be ruled by them," *Fisher v. Dist. Court of Sixteenth Jud. Dist.,* 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106, 110 (1976), quoting *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959), the trial court may properly accept jurisdiction. Where, however, there are factual disputes or issues raised concerning tribal law, membership rights and the like, the trial court should defer a decision as to jurisdiction while making a further inquiry. It is the court's task to decide where jurisdiction best lies—where the factual determination would best be made.

Often the tribal court's insight into tribal cultural values and way of life will make it the best forum for such a determination. Although we are not social scientists, as judges we must be aware of the fact that acts which mean one thing in our culture may have a very different meaning in another culture. What I might see as circumstances implying abandonment may well be culturally-prescribed parental behavior in another social structure. A child left in a grandparent's care for an apparently lengthy period may, in fact, be in a normal period of training for adult tribal responsibility. Further, we most recognize the economic circumstances of Indians in our State may sometimes require Indian parents to seek employment off the reservation and even to temporarily relinquish care of their children to those in a more fortunate financial position.

In deciding whether the exercise of state court jurisdiction will improperly interfere with the tribe's right to govern itself and relationships between its members, two recent decisions are helpful: *Wakefield v. Little Light,* 276 Md. 333, 347 A.2d 228 (1975); *Wisconsin Potowatomies v. Houston,* 393 F.Supp. 719 (D.W.Mich., 1973). These two opinions discuss underlying policy issues and provide practical guidelines for decisions.

If I read the majority opinion correctly, it says that the tribal court has no jurisdiction, not even concurrent, when the Indian child who is the subject of a severance petition is living off the reservation. If this is so, I foresee problems when due process and equal protection issues, as well as issues of Indian sovereignty, are raised in an Indian child custody case decided in a state court.