884 P.2d 234

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JS–501904.**

**No. 1 CA–JV 94–0001.**

Court of Appeals of Arizona, Division 1, Department A.

July 19, 1994.

Review Denied Nov. 29, 1994.

Grant Woods, Atty. Gen. by David J. Martin, Asst. Atty. Gen., Phoenix, for appellee.

Mary C. McDonald, Glendale, for Children.

Joanne Landfair, Phoenix, for appellant.

## OPINION

McGREGOR, Judge.

The juvenile court terminated the mother's parental rights with respect to three of her minor children. The mother appeals, alleging that the juvenile court erred (1) in finding that termination of the parent-child relationship was in the children's best interest, (2) in finding that the Arizona Department of Economic Security (DES) made appropriate efforts to provide services to the mother, (3) in admitting the social study report into evidence, and (4) in allowing DES to amend the petition to terminate to include a new ground for termination. We affirm the severance order.

### I.

The mother has six children; this severance action concerns only her three youngest children, born in 1985, 1987, and 1989. In April 1991, Child Protective Services (CPS) took the three children into custody and filed a dependency petition. The dependency petition alleged that the mother was being arrested for an outstanding warrant and that no relatives were willing or able to care for the children. The mother's apartment was "filthy and in a state of disrepair with broken windows and exposed electrical wiring." The mother has a history of drug abuse, and her youngest child was born addicted to cocaine. CPS had received many referrals from different sources alleging that the mother left the children alone for several hours at a time. Furthermore, the mother had refused to participate in the drug rehabilitation and other services that various agencies offered.

After DES filed the dependency petition, CPS continued to attempt to provide services for the mother. According to the social study CPS filed before the severance hearing, CPS referred the mother to Friendly House for parenting skills training, scheduled a psychological evaluation, suggested drug treatment programs the mother could attend, and scheduled several appointments for the mother to visit with the children. CPS explained to the mother that she must participate in these programs to regain custody of her children. The mother, however,

attended only part of one parenting class and was "hostile" to the parent aides from Friendly House who came to her residence. She also refused to allow the psychologist to conduct any tests, failed to complete any drug treatment program, and often missed scheduled appointments to visit with her children. When she visited the children, she sometimes interacted appropriately with them, but other times she appeared tired and disinterested in them. After the dependency petition was filed, she visited the children approximately four times in 1991, and apparently only once during 1992.

Meanwhile, in September 1991, the mother was arrested for possession of narcotic drugs. In October 1991, the children were made wards of the court. In November 1991, the mother again was arrested for possession of narcotics, possession of drug paraphernalia, and failure to appear. In February 1992, the court sentenced her to a three year term of probation for the drug offenses. In January 1993, the mother again was arrested for possession of narcotic drugs. The court imposed a sentence of intensive probation and ordered her to serve a three month jail term as a condition of probation.

In February 1993, DES filed a petition to terminate the mother's parental rights. The severance petition alleged as grounds for termination that the children had been in an out-of-home placement for a period in excess of one year pursuant to a court order and that the mother had willfully refused or substantially neglected to remedy the circumstances that caused the children to be in out-of-home placement. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 8–533.B.6.(a) (1989). Alternatively, the petition alleged that the mother had abandoned the children.[1]

In May 1993, the mother was released from jail. She called the CPS caseworker to schedule an appointment to visit her children. The caseworker scheduled the appointment, but required that the mother call to confirm the appointment in advance. CPS cancelled the appointment when the mother failed to confirm it.

At the June 15, 1993 pretrial conference, over the mother's objection, the court allowed DES to amend the severance petition to allege that the children had been in an out-of-home placement for more than two years and the mother had been unable to remedy the circumstances leading to the out-of-home placement. *See* A.R.S. § 8–533.-B.6.(b) (1989). The court also allowed DES to file a supplemental social study and allowed the mother to file objections to the contents of the social study. Subsequently, DES filed a redacted social study, which eliminated the portions to which the mother had objected.

The court held the severance hearing in August 1993 and terminated the parent-child relationship between the mother and her three youngest children in October 1993. The minute entry stated as follows:

> The evidence clearly and convincingly establishes that the children are being cared for in an out-of-home placement under the supervision of the Arizona Department of Economic Security, that the agency responsible for their care has made a diligent effort to provide appropriate remedial services for the children and that they have been in an out-of-home placement for an accumulative total period of two years or longer pursuant to Court Order, and that the children's mother has substantially abandoned, neglected, willfully refused or has been unable to remedy the circumstances which have caused the children to be in an out-of-home placement, and there is substantial likelihood that she will not be capable of exercising proper and effective parental care and control in the near future.
>
> The evidence clearly and convincingly establishes that the termination of the parent-child relationship between the mother and her children is in the best interest of the children.·

The mother timely appealed. This court has jurisdiction pursuant to A.R.S. section 8–236 and Rule 24 of the Arizona Rules of Procedure for the Juvenile Court.

---

1. The petition also alleged, and the court found, that the children's natural fathers had abandoned them. This finding is not challenged on appeal.

## II.

### A.

We first consider whether the trial court erred in finding that termination of the parent-child relationship was in the children's best interest. This court will not set aside the juvenile court's findings of fact if reasonable evidence supports the findings. *Pima County Juvenile Action No. S–139*, 27 Ariz. App. 424, 427, 555 P.2d 892, 895 (1976).

The mother asserts that, because DES did not have an immediate adoption placement for all three children, the children's best interest required leaving the parent-child relationship intact. She asserts that the small number of African–American placements available will make it difficult for DES to place the children and that "there is no way of predicting the long term psychological effects of any as-of-yet unknown adoption." She contends that the court should "wait until an adoption is a real possibility before terminating parental rights."

DES need not show that it has a specific adoption plan before terminating a parent's rights; DES must show that the children are adoptable. *See Yavapai County Juvenile Action No. J–9956*, 169 Ariz. 178, 180, 818 P.2d 163, 165 (App.1991); *Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. 238, 243–44, 756 P.2d 335, 340–41 (App. 1988). At the severance hearing, a DES caseworker testified that the children would benefit from termination of the parent-child relationship with their mother because the children then would be legally free to be adopted. She stated that the oldest child's foster mother was interested in adopting her, although the foster mother had not yet been certified for adoption. The caseworker also testified that the two younger children were adoptable and that, although DES had not yet located an adoption placement for them, DES had assigned all three children to an adoptions caseworker. She stated that the children would benefit psychologically from the stability an adoption would provide.

Furthermore, the caseworker testified that the current situation created "a lot of questions, uncertainty, and instability for these children" and that they would benefit psychologically from the severance. The evidence revealed that the mother had missed several appointments to visit with the children and had interacted inappropriately with them during several other visits, leading to emotional distress for the children. The evidence presented at the hearing amply supported the conclusion that the children are adoptable and the juvenile court's determination that severance is in the children's best interests.

### B.

We next consider whether the trial court erred in finding that DES made appropriate efforts to provide services to the mother. The mother asserts that DES "did not make every reasonable effort to reunite this family." She complains that Friendly House prematurely closed her case after making three visits to the mother's home with no contact, that Friendly House did not offer help with her substance abuse problem, and that the DES caseworkers did not maintain contact with her when she was in jail.

Under A.R.S. section 8–533.B.6, DES must show that it has made a "diligent" effort to provide appropriate remedial services before it can sever a parent-child relationship based on the child's continuing out-of-home placement. Furthermore, "[t]ermination of the parent-child relationship should not be considered a panacea but should be resorted to only when concerted effort to preserve the relationship fails." *Arizona State Dep't of Economic Sec. v. Mahoney in and for the County of Pima*, 24 Ariz.App. 534, 537, 540 P.2d 153, 156 (App.1975).

According to the social study, Friendly House offered parenting classes at the agency and parent skills training in the mother's home. The mother, however, attended only part of one parenting class and was hostile toward the parent aides who came to her home. She stated that she felt she did not need parent training and refused to participate. DES also recommended several drug treatment programs and consistently directed the mother to control her drug problem so that she could regain custody of her children. The mother, however, failed to complete several drug treatment programs and refused to enroll in others. DES twice arranged for the

mother to undergo a psychological evaluation, and twice she refused to participate. DES arranged for the mother to visit her children nearly every time she requested visitation, but the mother rarely requested visitation, and when visitation was scheduled, the mother often failed to appear at the scheduled time and sometimes appeared but failed to interact appropriately with the children.

■ The evidence supports the trial court's finding that DES made diligent efforts to provide services to the mother. *See Pima County Juvenile Action No. S–139,* 27 Ariz.App. at 427, 555 P.2d at 895. DES provided the mother with the time and opportunity to participate in programs designed to help her become an effective parent; it therefore fulfilled its statutory mandate. DES is not required to provide every conceivable service or to ensure that a parent participates in each service it offers. *Cf. Maricopa County Juvenile Action No. JS–5209 and No. JS–4963,* 143 Ariz. 178, 189, 692 P.2d 1027, 1038 (App.1984) (DES's failure to provide ongoing psychotherapy does not foreclose termination of parental rights). The mother's failure or refusal to participate in the programs and services DES offered or recommended does not foreclose termination of her parental rights.

## C.

We next address the mother's contention that the trial court erred in admitting the social study into evidence. A.R.S. section 8–536 requires the court to order a social study report, addressing the "circumstances of the petition, the social history, the present condition of the child and parent, proposed plans for the child, and such other facts as may be pertinent to the parent-child relationship." A.R.S. § 8–536.A (1989). The report must include a specific recommendation and the reasons the parent-child relationship should or should not be terminated. *Id.* Section 8–537 provides that a finding of grounds for termination must "be based upon clear and convincing evidence under the rules applicable and adhering to the trial of civil causes." A.R.S. § 8–537.B (1989). In making that finding, the court "may consider any and all reports required by this article or ordered by the court pursuant to this article and such

reports are admissible in evidence without objection." *Id.; Pima County Juvenile Action No. S–139,* 27 Ariz.App. at 426, 555 P.2d at 894 (reports required under section 8–536 "are admissible in evidence without objection"). Thus, under section 8–537.B, the social study was admissible.

### 1.

■ The mother appears to assert that A.R.S. section 8–537.B is unconstitutional to the extent that it allows the court to consider evidence not otherwise admissible under the rules of evidence. She correctly asserts that "[t]he legislature cannot repeal the Rules of Evidence or the Rules of Civil Procedure made pursuant to the power provided [the Arizona Supreme Court] in article 6, § 5 [of the Arizona Constitution]." *State ex rel. Collins v. Seidel,* 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). The court in *Seidel* also stated, however, that the court will "recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated," so long as the statute does not conflict with or "engulf a general rule of admissibility." *Id.* (citation omitted).

Here, the statute allowing admission of social study reports in termination proceedings is similar to the court-promulgated rule of procedure allowing admission of investigatory reports in dependency hearings. *Compare* A.R.S. § 8–537.B (1989) *with* Ariz. R.P.Juv.Ct. 16.1(f) (1994) *and* former Airz. R.P.Juv.Ct. 16(a) (1991). The statute does not conflict with or engulf a general rule of admissibility, but rather provides a narrow exception to the hearsay rule for reports required by statute. We therefore hold that A.R.S. section 8–537.B. provides a "reasonable and workable" supplement to the rules of evidence. The report as a whole is admissible, even over a given party's objection.

### 2.

■ The mother also contends that termination of parental rights affects the fundamental right of family integrity, and parents in termination proceedings are entitled to certain due process protections, citing *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). She appears to contend that, notwithstanding section 8–537.B, if

the State wishes the court to consider the information in the social study, it must follow the procedure for admission of evidence in a civil case. She asserts that the social study was based on hearsay and was therefore inadmissible under the rules of evidence. Because the juvenile court relied on the inadmissible report after the mother objected to its admission, she contends, this court must reverse the decision terminating her parental rights. To support her argument that A.R.S. section 8–537.B does not mean that the social study is admissible over her objection, the mother cites *Maricopa County Juvenile Action No. J–75482*, 111 Ariz. 588, 536 P.2d 197 (1975) (hereinafter "the Maricopa County case").

In the Maricopa County case, the supreme court addressed the procedure for admission of evidence contained in social records under former Rule 16(a) of the Arizona Rules of Procedure for the Juvenile Court. Former Rule 16(a) provided: "Prior to a hearing of a neglect or dependency action, the court may examine the social records of any person or agency with reference to the child and make the same available to all interested parties and their counsel prior to the hearing." Ariz.R.P.Juv.Ct. 16(a) (1991); *cf.* Ariz. R.P.Juv.Ct. 16.1(f) (1994) (allowing admission of the social records if the reports have been provided to all parties and the caseworker who prepared the report is available to be cross-examined). Former Rule 16(a) was based on A.R.S. section 8–546.01.C.7, which required CPS to submit an investigatory report before a dependency hearing. *See* Ariz. R.P.Juv.Ct. 16.1(f), Note to 1993 amendment. The supreme court held that the information contained in the report was hearsay and that the State had the burden to prove the material in the report. 111 Ariz. at 593, 536 P.2d at 202. The court stated that the trial court could consider the report, but

> if counsel for any party objects to *any material in the report* being considered by the trial court, *such material* may not be considered. Any party desiring to have the material in the report considered by the trial court must follow the procedure for admission of evidence in a civil case.

*Id.* (emphasis added).

Here, the trial court allowed DES to file the social study, then allowed the mother to file objections to the contents of the social study. The mother did so, and DES redacted the portions of the social study to which the mother objected. The court then considered the remaining portions of the report.

The mother objected to admission of the *report as a whole*, however, as well as objecting to the specific portions that DES later redacted. The mother appears to assert that the Maricopa County case requires the court to disregard the entire report if any party objects to admission of the entire report. If such a general objection prohibits admission of the entire report, the State would have to prove the material in the report through witnesses at trial or rely upon an exception to the hearsay rule to admit the report into evidence. Although witnesses at the hearing in this case testified to much of the material contained in the report, they did not testify to all of the material in the report. The trial court apparently relied heavily on the social study report; finding of fact number eight incorporates the report "by reference as if fully set forth."

We disagree with the mother's assertion that the Maricopa County case requires the court to disregard the entire social study report. Interpreting the *court's language so broadly* would effectively eliminate the reports required by section 8–537.A by allowing any party to prevent the court from considering a social study report merely by objecting to the report as a whole without even stating a specific basis for objection. These reports provide helpful information not only for DES, but also for the court and for the parents.

The Maricopa County case requires that "if counsel for any party objects to *any material in the report* being considered by the trial court, *such material* may not be considered." 111 Ariz. at 593, 536 P.2d at 202 (emphasis added). Because DES redacted the portions of the social study to which the mother objected, the juvenile court complied with the holding of the Maricopa County case. The court did not violate the mother's due process rights when it considered the redacted social study.

### 3.

The mother also asserts that, even if the redacted social study was properly admitted, the court improperly considered the redacted portions of the social study. She contends that the memorandum she filed to list her objections to the social study merely served to draw the court's attention to the inadmissible portions of the report. The court's minute entry, however, indicates that the court relied only on the "social study prepared by the Department of Economic Security and in evidence as Exhibit 1." Exhibit 1 in the trial record is the copy of the social study with the portions to which the mother objected blacked out. The record therefore does not support the mother's assertion that the court improperly relied on the unedited version of the social study.

### D.

Finally, we address the mother's contention that the trial court erred in allowing DES to amend the petition to include a new ground for termination. She asserts that the court violated her due process rights by terminating her parental rights based on a ground that did not exist when the petition was filed.[2]

"[T]he parent's interest [in the parent-child relationship] ... may not be changed without due process and compliance with the statutes involved." *Maricopa County Juvenile Action No. JS–734*, 25 Ariz. App. 333, 338, 543 P.2d 454, 459 (1975). Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *Id.* at 339, 543 P.2d at 460 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

The Arizona Rules of Civil Procedure, however, provide that "[l]eave to amend shall be freely given when justice requires." Ariz.R.Civ.P. 15(a)(1) (1994).

Nevertheless, "[n]otice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Owen v. Superior Court*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). The grant or denial of leave to amend a pleading is within the trial judge's discretion, and this court will not disturb the trial court's decision absent an abuse of discretion. *Hall v. Romero*, 141 Ariz. 120, 124, 685 P.2d 757, 761 (App.1984).

In this case, the mother had adequate notice of the new ground for termination. The trial court acted within its discretion in allowing the amendment, which merely added a new legal theory supported by facts already alleged in the original petition. *See Owen*, 133 Ariz. at 79, 649 P.2d at 282. Other Arizona courts also have allowed DES to amend the petition to allege a new ground for termination when, as here, the severance hearing was continued, allowing the parent an opportunity to regain custody of the child, but the parent failed to take advantage of the opportunity. *See Maricopa County Juvenile Action No. JS–6520*, 157 Ariz. at 240, 756 P.2d at 337. In addition, the mother had adequate notice of the new theory and an opportunity to defend against the allegations. *See Maricopa County Juvenile Action No. JS–734*, 25 Ariz.App. at 339, 543 P.2d at 460. The trial court therefore did not violate the mother's right to due process by allowing DES to amend the petition to add a new ground for termination of the parent-child relationship.

Furthermore, the trial court apparently based its termination order on all three of the grounds that DES alleged: abandonment; out-of-home placement for more than a year and willful refusal to remedy the circumstances leading to the out-of-home placement; and out-of-home placement for more than two years, the parent's inability to remedy the circumstances leading to the out-of-home placement, and substantial likelihood that the parent will not be capable of exercising effective parental care and control in the near future. Therefore, even if the court erred in allowing the amendment to add the

---

**2.** Because the children had been in out-of-home placement less than two years when DES filed the petition in February 1993, A.R.S. § 8–533.-B.6.(a) applied. When the court permitted DES to amend the petition in June 1993, the children had been in out-of-home placement more than two years, making A.R.S. § 8–533.B.6.(b) applicable also.

third ground for severance, the error was harmless because the court would have terminated the parent-child relationship based on the other two grounds alleged.

### III.

For the foregoing reasons, we affirm the trial court's order terminating the parent-child relationship between the mother and the three children who are the subject of this petition.

EHRLICH, P.J., and GERBER, J., concur.