[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13125
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 27, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-60420-CV-STB

JAMES VENTURES, L.P.,
a Texas Limited Partnership,
by Robert Alpert its General Partner,

Plaintiff-Counter
Defendant-Appellant
Cross-Appellee,

versus

TIMCO AVIATION SERVICES, INC.,
a Delaware corporation,

Defendant-Counter
Claimant-Appellee
Cross-Appellant,

THIRD PARTY DEFENDANT DALE
BAKER,
LACY HARBER,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(February 27, 2009)

Before TJOFLAT, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant James Ventures, L.P. ("JV") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Timco Aviation Services, Inc. ("Timco") on JV's claim for breach of an oral indemnification agreement. The district court held that JV was not a real party in interest and dismissed the action pursuant to Fed.R.Civ.P. 17. Alternatively, the court determined that JV's claims were barred by the three year statute of limitations under Arizona law for breach of an oral contract of indebtedness. Az. Stat. § 12-543. On appeal, JV asserts that it is a real party in interest. JV also argues that the four year statute of limitations under Florida law governs its claim and, in the alternative, that its claims are timely under the three year Arizona statute of limitations. For the reasons set forth below, we affirm.

## I. BACKGROUND

In late 2000, Timco was in a financial crisis. It was in default on its loan

obligations and its lenders were threatening liquidation unless Timco reduced its debt. In order to satisfy its lenders, Timco arranged for the sale of one of its component businesses to Kellstrom Industries, Inc. ("Kellstrom"). Kellstrom agreed to purchase Timco's parts redistribution business ("Kellstrom Transaction" or "the Transaction"). However, Kellstrom had a liquidity problem. Kellstrom's lenders would not approve the Transaction unless Kellstrom generated an additional eight million dollars in working capital. In order to obtain the necessary cash, Kellstrom entered into a contract with a third party to sell and lease back its Florida headquarters building (the "Kellstrom Building").

In order to avert Timco's imminent demise, it was imperative that the Kellstrom Transaction close by December 1, 2000. However, the sale of the Kellstrom Building was delayed. Therefore, in an effort to complete the Transaction by the December 1st deadline, Timco obtained four investors to post four letters of credit ("LOCs") for Kellstrom in the amount of two million dollars each. The investors were JV, Don Sanders, Robert Belfer and LJH Corporation (collectively "LOC Lenders"). In consideration for the LOCs, Kellstrom entered into an Agreement with Respect to Standby Letter of Credit Facility ("LC Facility Agreement"), which provided that any draw on the LOCs would be considered a term loan ("Loan") and would be repaid by Kellstrom. The Loan maturity date

3

was December 1, 2001. Under a separate Purchase and Sale Agreement, the LOC Lenders also secured the right to buy the Kellstrom Building for an agreed upon price less a full credit for amounts drawn on the LOCs. During the negotiation of the LOCs, JV alleges that Dale Baker, Timco's chief executive officer and chairman of the board during the relevant period, orally agreed that Timco would indemnify the LOC Lenders against any loss suffered as a result of posting the LOCs ("Indemnification Agreement").

The sale of the Kellstrom Building fell through and Kellstrom's lenders called the LOCs on or about October 18, 2001. JV alleges that Belfer and Sanders subsequently assigned their claims to JV. Thus, JV possessed the rights related to six million dollars drawn on the LOCs. Then, JV assigned its rights under the LC Facility Agreement (and any and all rights ancillary thereto) to Danro Corporation ("Danro"), General Partner of JV. The assignment included the right to purchase the Kellstrom Building.[1] In November of 2003, Danro acquired the Kellstrom Building (receiving a full credit for the six million dollars drawn on its LOCs) and sold it to a third party in December of 2004.

On October 25, 2005, JV filed this lawsuit in an Arizona district court

---

[1] It is disputed whether JV also assigned its rights under the Indemnification Agreement. For purposes of the following analysis we assume, but do not decide, that JV did not assign its rights under the Indemnification Agreement.

seeking indemnification from Timco for losses it sustained from the posting of the LOCs. Timco moved to dismiss the case for lack of personal jurisdiction and improper venue. Rather than oppose the motion, JV agreed to transfer the case to Florida under 28 U.S.C. § 1404(a). The Florida district court entered summary judgment in favor of Timco on the grounds that JV was not a real party in interest, and, alternatively, that the claims asserted were barred by the three year statute of limitations under Arizona law. JV appeals.

## II.  STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

## III.  DISCUSSION

We first address whether JV's claims are barred by the Arizona statute of limitations. We find that they are, and, accordingly, we find no need to reach the alternative grounds upon which we might resolve this case.

A.  Whether Arizona law applies

5

It is well established that a transfer under § 1404(a) is generally "but a change of courtrooms." Van Dusen v. Barrack, 376 U.S. 641, 639, 84 S. Ct. 805, 821 (1964). The transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue." Id. This rule is based on two rationales. First, the Supreme Court was concerned "that the principles underlying Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188 (1938), would be violated if a change of venue could result in a disposition that could not have been achieved if the action were initially brought in state court." Roofing & Sheet Metal Serv., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 991 (11th Cir. 1982) (citing Van Dusen, 376 U.S. at 637-38, 58 S. Ct. at 819-20). Second, the Court determined that Congress did not intend for § 1404(a) "to defeat the state-law advantages that might accrue from the exercise of [the plaintiff's] venue privilege." Van Dusen, 376 U.S. at 635, 58 S. Ct. at 819.

However, there is a relevant exception. "Van Dusen does not govern cases in which the transferor court lacked personal jurisdiction of the defendant." Roofing & Sheet Metal Serv. Inc., 689 F.2d at 991. When the transferor court lacked personal jurisdiction over the defendant, the transferee court must apply the law of the state in which it sits. Id. at 992. To hold otherwise "would defeat the goal of uniformity articulated in Erie and elaborated in Van Dusen, by producing

6

different outcomes, depending on whether the action is initially brought in state or federal court." Id. It would also encourage forum shopping by allowing a plaintiff "to 'capture' the law of an impermissible forum." Id.

This dispute can be resolved by straightforward application of these principles. JV argues that the Arizona district court lacked personal jurisdiction over Timco. Therefore, the Florida district court should have applied Florida's choice of law. The Florida district court noted that there had been no judicial determination that the Arizona district court lacked personal jurisdiction over Timco. After the transfer, Timco formally waived its defense of lack of personal jurisdiction.[2] As the district court properly noted, lack of personal jurisdiction is a

---

[2]    JV argues that Timco is judicially estopped from arguing that the Arizona court has personal jurisdiction. We disagree. Judicial estoppel is an equitable doctrine invoked at the court's discretion. Stephens v. Tolbert, 471 F.3d 1173, 1177 (11th Cir. 2006). Courts have traditionally looked to three factors: "(1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. (internal quotations omitted).
    Timco filed a motion to dismiss for lack of personal jurisdiction in the Arizona district court. However, the court never ruled on the motion to dismiss. Instead, the parties stipulated to a transfer to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Neither the stipulation itself nor section 1404(a) makes any reference to lack of personal jurisdiction. Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Therefore, Timco never persuaded the Arizona court to accept its position that the court lacked personal jurisdiction. Furthermore, Timco is not asserting an inconsistent position. Timco is merely waiving its defense. Finally, we cannot perceive any injustice to JV in applying the law of the state in which it brought suit.

waivable defect.  See Lipofsky v. N.Y. State Workers Comp. Bd., 861 F.2d 1257, 1258 (1988).  Accordingly, the district court applied the law of Arizona (the transferor court) as required by Van Dusen.  We discern no error.[3]

B.  Whether JV's Claims are Barred by the Arizona Statute of Limitations

Under Arizona law, there is a three year statute of limitations for breach of an oral contract of indebtedness.  Az. Stat. § 12-543.  JV filed suit on October 25, 2005.  The LOCs were drawn on or before October 18, 2001.  Furthermore, all parties agree that Kellstrom was in default on its obligation to repay the LOC Lenders when the Loan matured on December 1, 2001.  Therefore, the district court determined that regardless of whether Timco's obligation to indemnify the LOC Lenders arose when the LOCs were drawn or when the Loan matured, the

---

[3]     The district court's resolution of this issue conforms not only with the letter of the law articulated in Van Dusen and Roofing & Sheet Metal, but also the rationale behind the law. First, both opinions expressed concern that a change of venue might produce an outcome that could not have been obtained if the action had originally been brought in state court – creating a result inconsistent with Erie principles.  See Van Dusen, 376 U.S. at 637-38, 58 S. Ct. at 819-20; Roofing & Sheet Metal Serv. Inc., 689 F.2d at 992.  Here, if the action had originally been brought in Arizona state court, Timco would have been permitted to waive its defense of lack of personal jurisdiction and submit to Arizona law.  See Matter of Duryea, 563 P.2d 885, 885 n.1 (Ariz. 1977).  Second, Van Dusen sought to prevent defendants from defeating the state-law advantages accompanying the plaintiff's privilege to select, from among permissible venues, where to bring suit.  See Van Dusen, 376 U.S. at 635, 58 S. Ct. at 819.  Here, Timco does not seek to defeat JV's venue privilege.  JV chose to bring suit in Arizona, and Arizona law is being applied to resolve the case.  Finally, Roofing & Sheet Metal sought to prevent impermissible forum shopping by the plaintiff.  See 689 F.2d at 992.  Here, JV is not attempting to "capture" the law of an impermissible forum.  Rather, JV is attempting to avoid the law of a permissible forum – that JV itself invoked.

filing of this suit in October of 2005 was barred by Arizona's three year statute of limitations.

JV asserts that a cause of action does not arise on a promise to indemnify until the plaintiff suffers damage. See HSL Linda Gardens Prop. v. Freeman, 859 P.2d 1339, 1340-41 (Ariz. Ct. App. 1993). Assuming this is true, JV's argument still fails. JV argues that the statute of limitations did not begin to run until Danro (its assignee) acquired and then resold the Kellstrom Building. At this point, JV claims that its loss was "liquidated."[4] However, the district court cited ample evidence to support the conclusion that JV suffered damage, at the latest, when Kellstrom defaulted on its obligation to repay the Loan. The court noted that Robert Alpert, a General Partner who brought suit on JV's behalf, testified that Timco was obligated to indemnify the LOC Lenders when the LOCs were drawn. JV's expert witness also calculated JV's damages from the time the LOCs were drawn. Accordingly, we discern no error in the district court's conclusion that JV's claims are barred by the Arizona statute of limitations.

IV. CONCLUSION[5]

---

[4] For purposes of argument alone, we accept the implicit assertion that JV might have sustained damage when Danro suffered a loss on the sale of the Kellstrom Building. Even assuming this is true, JV's argument fails.

[5] We find no error in the district court's grant of summary judgment. Accordingly, we need not address Timco's cross-appeal.

9

For the foregoing reasons, the opinion of the district court is

AFFIRMED.[6]

---