NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

WILDA M., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, G.M., T.M., *Appellees*.

No. 1 CA-JV 16-0524
FILED 7-25-2017

Appeal from the Superior Court in Maricopa County
No. JD528951
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Law Office of H Clark Jones LLC, Mesa
By Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

---

**T H O M P S O N**, Judge:

¶1            Wilda M. (mother) appeals from the juvenile court's order severing her parental rights to G.M. and T.M.  For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2            Mother is the biological parent of the subject children, who were born in August 2010 and March 2015.[1]  The Department of Child Safety (DCS) became involved in their parent-child relationship after DCS received a report in March 2015 that T.M. had been born substance exposed to marijuana.  Mother tested negative for illicit substances at the hospital after T.M.'s birth, but admitted to sporadic use of marijuana during her pregnancy.  She denied using other drugs.  Due to mother's willingness to participate in in-home services that DCS would provide, mother was discharged for the hospital with T.M. after a DCS case manager consented to her doing so.

¶3            Over the subsequent few weeks, however, mother failed to keep in contact with DCS, and DCS was unable to locate mother.  DCS ultimately learned that mother had been arrested on April 13, 2015, after a domestic violence dispute with her roommate. Mother was released the next day, and left the residence she shared with her roommate. She left G.M. with her roommate, and reportedly "bounc[ed] around from house to house" with T.M. DCS intervened and took temporary custody of both children and placed them in the same licensed foster home. DCS also filed a petition in which it alleged the children were dependent due to mother's neglect, based on substance-abuse, domestic violence (not involving the children), and mental illness.

¶4            The juvenile court found the children dependent in July 2015 and approved a case plan of family reunification.  Mother agreed with DCS

---

[1]        The children's alleged fathers are not parties of this appeal.

to participate in court-ordered services, including substance-abuse services, random drug testing, a psychological evaluation, parent-aide services, and supervised visits with the children. She also agreed to "self-refer" for anger management and domestic-violence classes. Mother participated in the DCS services, and had supervised visits with her children twice each week. However, mother failed to consistently submit to drug testing, and submitted diluted urine samples. Mother eventually completed an out-patient substance-abuse program in October 2015, however, she subsequently tested positive for alcohol consumption.

¶5        Because mother had continued a romantic relationship with a convicted felon while on probation for a prior aggravated DUI conviction, her probation was revoked. She was then sentenced to serve 2.5 years of incarceration. Mother expected to be released from prison in May 2017, but her maximum end date is December 2017. DCS did not facilitate in-person prison visits between mother and her children, but she had telephonic visits with them.

¶6        The superior court granted DCS's request to change the case plan to severance and adoption and DCS moved to sever mother's parental rights on the length-of-felony-sentence ground in March 2016. *See* Arizona Revised Statutes (A.R.S.) section 8-533(B)(4). At the contested severance hearing in October 2016, the DCS case manager testified that after mother's release, mother would not likely be reunited with the children for another year because mother would need to reestablish a relationship with the children, demonstrate stability, and complete anger management and substance-abuse treatment.[2] The case manager also testified that the children's placement was willing to adopt them.

¶7        In December 2016, the court issued an order severing mother's parental rights. The court found that the state had met its burden in proving the statutory ground, and that termination of mother's parental rights was in the children's best interests. Mother timely appealed to this court. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2016), and -2101(A)(1) (2016).

---

[2]        Notably, the record shows that during her incarceration mother had participated in various services, including over ten months of "Confronting Addictive Behaviors," Women in Recovery, twenty hours of DUI programming through Mothers Against Drunk Driving (MADD), and auto tech and graphic arts classes.

**DISCUSSION**

¶8        The sole issue on appeal is whether the juvenile court erred in finding that the termination of mother's parental rights was in the children's best interests.  Mother does not challenge the juvenile court's finding of the requisite statutory ground.

¶9        As relevant here, mother argues that DCS failed to meet the evidentiary standard to establish that the children would accrue an affirmative benefit from the termination of mother's parental rights, or be harmed by continuing the parent-child relationship. The evidence in the record from the juvenile court indicates otherwise.

¶10        The best interest inquiry "must include a finding as to how the child would benefit from a severance [of the parent-child relationship] *or* be harmed by the continuation of the relationship." *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5, 804 P.2d 730, 734 (1990).  In evaluating whether severance is in a child's best interest, the juvenile court is required to conduct the inquiry considering "the totality of the circumstances." *Dominque M. v. Dep't of Child Safety*, 240 Ariz. 96, 99, ¶ 12, 376 P.3d 699, 702 (App. 2016).  Therefore, even where a bond exists between a parent and her child — as mother argues exists in this matter, that bond is not dispositive in the best interest analysis.  *See id.* at 98, ¶ 12, 376 P.3d at 701.

¶11        This court has also held that a finding that severance is in a child's best interest may be accomplished by a showing, by preponderance of the evidence, that a child is adoptable[3] and the current placement is meeting the child's needs.  *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App. 2004).

¶12        As noted above, at the time of the severance hearing in October 2016, mother was expected to be away from G.M. and T.M. for approximately another year, after being incarcerated since November 2015.  Considering that, according to DCS, mother would need additional time to demonstrate her ability to provide stability and care for her children and to complete her rehabilitative services, any reunification between mother and the children would, at best, be prolonged.  During that time, the children

---

[3]        *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994) ("[DCS] need not show that it has a specific adoption plan before terminating a parent's rights; [DCS] must show that the children are adoptable.").

could be left in limbo, for an uncertain period, in the state's custody. Under these circumstances, DCS's testimony that the children's placement had been meeting their needs and was willing to adopt the children, was more than sufficient to support the court's finding that termination of mother's parental rights was in the children's best interests.

**CONCLUSION**

¶13 Accordingly, we affirm the juvenile court's order terminating mother's parental rights to both children.



AMY M. WOOD • Clerk of the Court
FILED: AA

5