NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

RAQUEL D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, PRISCILLA K., O. D., *Appellees*.

No. 1 CA-JV 14-0029

FILED 07-03-2014

---

Appeal from the Superior Court in Maricopa County
No. JD21417
The Honorable Joan M. Sinclair Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        Mother, Raquel D., appeals the termination of her parental rights to her child, O.[1] For the reasons stated below, we affirm.

### FACTS AND PROCEDURAL HISTORY

**I.     DCS Involvement**

¶2        Raquel is the mother of O., who was born in April 2011. Prior to the birth of O., DCS[2] became involved with Mother due to her history of substance abuse that resulted in the birth of two substance exposed newborns. Although DCS offered Mother programs to address her substance abuse issues, Mother did not participate in the services.

¶3        In December 2011, Mother took eight month old O. to a hospital where the infant was diagnosed with a fracture of her right tibia. Given DCS' prior involvement with Mother, DCS required her to undergo a drug test in January 2012, which returned a positive result. After Mother changed her story several times about how the infant injured her leg, and given the positive drug test result, DCS took custody of O., and later placed the infant in the care of a maternal aunt.

**II.    Reunification Services**

¶4        To regain custody of O., Mother was required to demonstrate sobriety, provide a drug free and stable environment, demonstrate effective parenting skills, and attend visitation sessions. As part of the permanency plan toward reunification, DCS "offered, made

---

[1] The juvenile court also terminated Father's parental rights. However, Father did not appeal the termination order, and is not part of this appeal.
[2] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Arizona Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. See ARCAP 27.

referrals for and/or [was] requesting" individual counseling, substance abuse treatment, psychological consultation, psychiatric evaluation, urinalysis drug testing, and visitation services. In June 2012, December 2012, and June 2013, the juvenile court found DCS had made reasonable efforts toward reunification of the family through its permanency plan.

## III.    Substance Abuse Services

### A.    Psychological and Psychiatric Services

**¶5**        As part of the reunification services aimed at addressing Mother's substance abuse issues, DCS referred Mother to TERROS Families F.I.R.S.T. outpatient services. Mother participated actively in the TERROS services beginning with her intake in March 2012, through September 2012, when Mother transitioned from group to individual counseling sessions. After graduating from standard outpatient services (SOP), Mother engaged in trauma group counseling through EMPACT Tempe, in October 2012, where she received a psychiatric evaluation.

**¶6**        In March 2013, Mother underwent a DCS referred psychological evaluation, which indicated Mother experienced anxiety, and manifested affective and physiological signs of depression. The evaluating psychologist opined there was a likelihood Mother had a bipolar disorder, but in order to administer the appropriate diagnostic tests, Mother was required to be substance free for at least six months. The psychologist also recommended a master's level counselor to assist Mother with her posttraumatic stress in the form of individual therapy and drug counseling, and recognized TERROS drug counselors as professionally sufficient to provide substance abuse therapy. Additionally, after reviewing the case records, the psychologist rated as poor Mother's likelihood of demonstrating adequate parenting skills within the foreseeable future.

**¶7**        In May 2013, DCS referred Mother to the Arizona Center for Change (A.C.C.) for individual counseling. Although the case manager's attempts to contact Mother to initiate counseling services in August were unsuccessful, Mother ultimately completed her intake in November 2013. DCS renewed support services in December 2013, so that Mother could continue counseling sessions and join a Dialectical Behavior Therapy (DBT) anger management group.

B.      Drug Testing

¶8      DCS provided Mother drug testing, which required her to undergo urinalysis a total of 209 times from January 2012, to November 2013.  Mother did not appear for drug testing on ninety-five occasions (45%), which DCS considered positive results.  In addition, Mother tested positive on two occasions for THC, three times for amphetamine use, and once for alcohol; an overall failure rate of 48%.  By July 2013, DCS moved to terminate Mother's parental rights, as O. had been in an outside placement for fifteen months or longer, DCS had made diligent efforts to provide appropriate reunification services, Mother was unable to remedy the circumstances that caused the child to be placed in DCS custody, there was a substantial likelihood Mother would not be capable of exercising proper and effective parenting and control in the near future, and severance was in the best interests of the child.  See Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(c) (2014).[3] After DCS moved to terminate parental rights, Mother tested positive for THC on two additional occasions.

## IV.    Termination of Parental Rights

¶9      At the December 20, 2013 severance trial, Mother testified she had used marijuana on a daily basis since she was eighteen, and her last use occurred in October 2013. Mother also admitted using methamphetamine after DCS removed O., and again in June 2012. Given his review of the records, the evaluating psychologist determined Mother continued to abuse cannabis, had not remedied her substance abuse issues, and failed to see the seriousness of needing to resolve her drug problem.  The psychologist further asserted there was a substantial likelihood Mother's substance abuse problems would continue for a prolonged, indeterminate period.

¶10     In January 2014, the juvenile court terminated Mother's parental rights, and found DCS had proven by clear and convincing evidence the allegations of the severance motion, which included DCS's assertion it made diligent efforts to provide appropriate reunification services.  The juvenile court also found Mother had failed to resolve her substance abuse issues, noting in particular that Mother's positive test results occurred as recently as two months prior to the severance trial. The juvenile court further found that her positive test results, coupled with her inconsistent testing at TASC, indicated she had failed to rectify

---

[3] Absent material revisions, we cite the current version of the statutes and rules unless otherwise indicated.

the issues that existed when DCS took custody of O., twenty-one months prior to the severance hearing. Finally, the juvenile court determined, by a preponderance of the evidence, that termination was in the best interest of the child as credible evidence demonstrated "the child would benefit from the severance or be harmed by the continuation of the relationship;" noting O. could "have the stability she needs" and "[was] adoptable." Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2014), 12-120.21(A)(1) (2014), and 12-2101(A) (2014).

## DISCUSSION

¶11        "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Therefore, we will uphold the juvenile court's termination of parental rights "unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998). To carry its burden on a petition to terminate parental rights, the petitioner must prove at least one statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence. *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 334, ¶ 9, 198 P.3d 1203, 1206 (2009). The petitioner must also prove by a preponderance of the evidence that severance is in the best interests of the child. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587, ¶ 7, 177 P.3d 327, 329 (App. 2008). We review interpretations of court rules *de novo. Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 20, 282 P.3d 437, 441 (App. 2012).

¶12        On appeal, Mother asserts the juvenile court order terminating her parental rights was invalid because 1) DCS failed to make diligent efforts toward reunification; and 2) the juvenile court did not find DCS had made diligent efforts to reunify the family.

      A.    DCS Reunification Services

¶13        Once a child is placed in custody, A.R.S. § 8-533(B)(8) requires the agency responsible for the child's care to make a "diligent effort to provide appropriate reunification services." In providing services, the agency is "not required to offer every conceivable service or to ensure that a parent participates in each service it offers." *In re Appeal in Maricopa Cnty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353, 884 P.2d 234, 239 (App 1994). The agency, however, must "undertake measures

with a reasonable prospect of success." *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34, 971 P.2d 1046, 1053 (App. 1999).

¶14        Mother asserts DCS failed to make diligent efforts to provide reunification services because it failed to offer the DBT anger management therapy recommended by her counselor to assist Mother in addressing her emotional issues connected with past trauma. Mother relies upon *Mary Ellen C.*, for the proposition that DCS must offer "the very services that its consulting expert recommends" in order to meet the threshold requirement of making diligent efforts toward reunification.  *Id.* at 192, ¶ 37, 971 P.2d at 1053.  We read *Mary Ellen C.* differently.

¶15        In *Mary Ellen C.*, this Court addressed the preliminary question of whether DCS was obliged to make reasonable efforts to preserve the family relationship before seeking termination of parental rights on mental illness grounds, pursuant to A.R.S. § 8-533(B)(3).[4] *Id.* at 191, ¶¶ 28-29, 971 P.2d at 1052.  Finding DCS did not "prove by clear and convincing evidence that it had made a reasonable effort to provide Mary with rehabilitation services or that such an effort would be futile," *id.* at 193, ¶ 42, 971 P.2d at 1054, this Court reasoned:

> [DCS] offered Mary no significant reunification services for almost a year after removing [the child] from her care. It waited more than a year after removing the child before referring a mother with a serious mental illness for a psychological evaluation and did not steer her to ComCare for treatment until three months more had passed. As for steering Mary to Comcare [sic], which was the sum total of [DCS's] response to Dr. Bencomo's recommendation of intensive psychiatric services, [DCS] gave Mary a phone number, encouraged her to self-refer, and never followed up sufficiently to secure ComCare records of her progress.
>
> . . . Mary received six sessions of counseling at ComCare. This level of intervention obviously fell short of Dr. Bencomo's recommendation.

---

[4] A.R.S. § 8-533(B)(3) states, in pertinent part: "Evidence sufficient to justify the termination of the parent-child relationship shall include . . . [t]hat the parent is unable to discharge parental responsibilities because of mental illness [or] mental deficiency . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."

*Id.* at 192, ¶¶ 35-36, 971 P.2d at 1053.

**¶16**        The case at bar, however, differs from *Mary Ellen C.* In the immediate case, when DCS assumed custody of O., it began providing a wide range of services aimed at assisting Mother in attaining and maintaining sobriety. Some of those services included group and individual counseling at TERROS, as well as trauma group counseling at EMPACT Tempe where Mother received a psychiatric evaluation and medication for anxiety and depression. Further addressing Mother's mental health needs, DCS provided two psychological consultations, a psychological evaluation, and additional individual counseling sessions at A.C.C., where the counselor recommended DBT anger management group therapy.

**¶17**        We disagree with Mother's assertion DCS failed to provide reasonable reunification services because Mother did not receive the DBT anger management therapy that is the subject of her appeal. The record indicates DCS renewed Mother's referral for services for the express purpose that she join a DBT anger management therapy group. Moreover, DCS approved the DBT recommendation expeditiously: Mother began counseling sessions at A.C.C. in late November 2013, and, either at that time or shortly thereafter, the counselor recommended the DBT therapy. Prior to the December 20, 2013 termination hearing, DCS renewed the services to allow Mother to continue individual counseling and to join a DBT anger management group. Even with DCS' response, Mother testified she needed several additional sessions of individual counseling to prepare for DBT therapy. Though, arguably, the juvenile court's severance of Mother's parental rights on January 9, 2014, may have precluded Mother's involvement in DBT therapy, we cannot agree with Mother's contention that DCS did not make diligent efforts to reunify the family by failing to offer "the very services that its consulting expert recommends." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 37, 971 P.2d at 1053.

        B.        The Juvenile Court's Findings

**¶18**        Mother also asserts the termination order is invalid because the juvenile court failed to specifically find DCS made diligent efforts to reunify the family. Mother asserts the juvenile court failed to meet the requirements of A.R.S. § 8-533(B)(8)(c) and Arizona Rule of Procedure for the Juvenile Court 66(F)(2)(a) because rather than specifically finding DCS made diligent efforts to provide reunification services, the juvenile court merely made legal findings pertaining to Mother's inability to resolve issues present at the time DCS assumed custody of O.

**¶19** The record, however, indicates the juvenile court made the appropriate findings. On three occasions prior to the termination hearing; in June 2012, December 2012, and June 2013, the juvenile court found DCS had made reasonable efforts toward reunification of the family. Furthermore, although the juvenile court did not specifically engage in reasonable efforts analysis in granting the termination motion, it did find DCS met its burden of proof regarding the allegations in its severance motion; those allegations included DCS' assertion it had made diligent efforts, as required by A.R.S. § 8-533(B)(8), in providing services.

**¶20** Most importantly, however, when sufficient evidence exists to support a termination order, we presume the juvenile court made the necessary findings even though the juvenile court did not explicitly engage in reasonable efforts analysis under A.R.S. § 8-533(B)(8). *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49-50, ¶¶ 16-17, 83 P.3d 43, 49-50 (App. 2004) (citations omitted). Here, the record clearly indicates DCS provided services necessary toward Mother regaining custody of her child. In addition to the drug testing and psychological and psychiatric services aimed at addressing Mother's substance abuse issues, parenting classes, supervised visitation, and transportation services were made available. With that, we are satisfied sufficient evidence was presented to support a "diligent effort" finding.

## CONCLUSION

**¶21** For the foregoing reasons, we affirm the juvenile court's termination of Mother's parental rights.



Ruth A. Willingham · Clerk of the Court
FILED: gsh