NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., *Appellees*.

No. 1 CA-JV 16-0420
FILED 4-4-2017

Appeal from the Superior Court in Maricopa County
No. JD29733
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Kent E. Cattani joined.

---

**K E S S L E R**, Judge:

**¶1**        James P. ("Father") challenges the juvenile court's order severing his parental rights to his child, JM. For the following reasons, we affirm the juvenile court's order.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Father is the biological father of JM, born March 21, 2015. When JM was born, the Department of Child Safety ("DCS") took JM into custody because she tested positive for opiates at birth and JM's mother ("Mother")[1] was facing allegations of abusing substances and being unable to care for JM due to domestic violence. At the time, Father's paternity had not been established and his whereabouts were unknown.

**¶3**        Father failed to appear at the dependency hearing without good cause in September 2015, and the juvenile court found JM dependent. Father established his paternity to JM approximately five months later. During the next five months, he failed to contact DCS, and although he attended one hearing, he did so only after the court added a concurrent case plan of severance and adoption, arriving at the hearing four minutes before it ended.

**¶4**        In July 2016, JM's guardian ad litem moved to terminate Father's parental rights on the grounds of abandonment and JM's being in an out-of-home placement for fifteen months. Father failed to appear at the initial severance hearing two months later. The court found Father had failed to attend the hearing without good cause and that Father had waived his right to contest the evidence supporting the grounds for termination. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-535(D) (2016) (allowing court to find parent has waived parent's legal rights and admitted the allegations of the

---

[1]        Mother consented to adoption of JM and is not a party to this appeal.

petition by failing to appear at the initial severance hearing).[2]  Father appeared at the one-day severance trial in September 2016 and explained he had missed the initial termination hearing because he had misunderstood the date of the trial.  However, the juvenile court affirmed its prior finding that Father failed to appear without good cause and proceeded with the severance trial.

**¶5**        At trial, the DCS case manager testified JM was adoptable, she had been residing in an approved foster care home that was committed to adopting her, and that even if that placement were to disrupt, she would still be adoptable going forward.  The case manager also stated Father had never met JM and that severance was in JM's best interests because it would provide her with permanency, stability, and care for her special needs.  Father admitted he had never met JM and that based on his communications with the foster placement, the foster placement was meeting JM's needs and was willing to adopt her.

**¶6**        The juvenile court found DCS had established a prima facie case, by clear and convincing evidence, that Father abandoned JM by failing to provide reasonable support and failing to maintain regular contact with JM for more than six months. *See* A.R.S. § 8-531(1) (2016) (stating "failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment").  It concluded Father had failed to rebut the presumption of abandonment because he did not demonstrate just cause for his failure to maintain a normal parental relationship with JM for more than six months. *See Universal Underwriters Ins. Co. v. State Auto. & Cas. Underwriters*, 108 Ariz. 113, 115 (1972) (clarifying "whenever evidence contradicting [a] presumption is introduced, the presumption vanishes"). Finally, the court concluded severance was in JM's best interests because severance would protect JM from Father's abandonment and provide her with an opportunity to be adopted by a placement who could meet her needs and provide her with love, stability, and permanency. It noted JM's "significant special medical needs that make her especially vulnerable," and found her current placement could meet her needs and wished to adopt her.

**¶7**        Father timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 8-235(A) (2016), 12-120.21(A)(1) (2016), and 12-2101(A)(1) (2016).

---

[2]        We cite the current version of the applicable statutes unless revisions material to this decision have since occurred.

**DISCUSSION**

I.      Standard of Review

**¶8**           To terminate parental rights, the juvenile court must find, by clear and convincing evidence, at least one of the statutory grounds set out in A.R.S. § 8-533(B).  *See* A.R.S. § 8-533(B) (2016); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  It must also find DCS has shown by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  On review, "we will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings, and we will affirm a severance order unless it is clearly erroneous." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citations omitted).

II.     Best Interests Findings

**¶9**           Father challenges the juvenile court's best interests findings, arguing: (1) DCS failed to prove severance was in JM's best interest by a preponderance of the evidence; (2) the court did not find Father was unable to parent JM or meet her special needs; and (3) the court failed to consider the factors in *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585 (App. 2008) before severing his parental rights.

**¶10**         To establish that severance of a parent's rights would be in a child's best interests, the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship. *Id.* at 587, ¶ 8 (citation and quotation omitted).  In making this determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) (citations omitted).

**¶11**         As an initial matter, Father's argument that the court erred by severing his rights without finding he was unable to parent JM or meet her special needs fails.  The statute does not require such a finding to justify termination.  *See* A.R.S. § 8-533(B)(1).  Similarly, Father's argument that the court failed to consider the factors in *Lawrence R.* fails. *Lawrence R.* does not provide mandatory factors for consideration.  Instead, it clarifies that although "a determination that the child is adoptable alone does not *require* the fact finder to conclude that severance is in the child's best interests," DCS "may satisfy the best interest requirement if it presents credible evidence that the child is adoptable." *Lawrence R.*, 217 Ariz. at 587, ¶ 8 (emphasis added) (citation omitted).

¶12      Here, DCS presented credible evidence JM was adoptable. The DCS case manager testified that JM was adoptable, had been residing in an approved foster care home that was committed to adopting her, and that even if that placement were to disrupt, JM would still be adoptable going forward.  Furthermore, the case manager testified severance was in JM's best interests because it would provide JM with permanency, stability, and care for her special needs. *See Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994) (upholding severance when case manager testified child "would benefit psychologically from the stability an adoption would provide" even though child did not have an adoptive placement).  This evidence is sufficient to show JM was adoptable, satisfying the best interests requirement.  Because DCS presented credible evidence JM was adoptable, the juvenile court did not err in severing Father's parental rights.

## CONCLUSION

¶13      For the foregoing reasons, we affirm the juvenile court's order severing Father's parental rights to JM.



AMY M. WOOD • Clerk of the Court
FILED:  AA