NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TARA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, P.A., P.A., J.A., *Appellees*.

No. 1 CA-JV 20-0137
FILED 12-22-2020

Appeal from the Superior Court in Mohave County
No.  S8015JD201900039
The Honorable Megan A. McCoy, Commissioner/Judge Pro Tempore

**AFFIRMED**

COUNSEL

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B A I L E Y**, Judge:

¶1        Tara R. ("Mother") appeals from an order terminating her parental rights to her children.  Because the court did not err in finding termination was in the children's best interests, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2        Mother[2] has three sons, born in 2009, 2013, and 2017, respectively.  The middle child has a congenital heart defect that has necessitated multiple surgeries and will require extensive continuing care, including a possible heart transplant.  The Department of Child Safety ("DCS") took custody of the children in May 2019, after Mother was arrested for possession of methamphetamine and drug paraphernalia.  At that time, Mother and the children were living with paternal great-grandparents, who told DCS they could not care for the boys indefinitely.

¶3        In late May 2019, the court found the children were dependent as to Mother.  The court changed the case plan to termination and adoption in October 2019 and set a termination trial for February 2020.

¶4        At trial, DCS showed it offered Mother a substance abuse evaluation, Arizona Families First services, in-patient detoxification, substance abuse therapy, and drug testing.  Over the nine months of the dependency, Mother failed to engage in any substance abuse services and continually tested positive for heroin, methamphetamine, THC, morphine and other opiates, including a positive test for morphine taken six days before the first day of trial.

---

[1] We view the evidence in the light most favorable to sustaining the superior court's findings.  *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008).

[2] Father's parental rights to the children were also terminated, but he is not a party to this appeal.

**¶5**  Mother conceded during her trial testimony that she did not have suitable housing or any employment. And although the evidence showed she participated in visits with the children and in parent aide services, the parent aide provider ended those services because Mother appeared to be under the influence of drugs and was unable to stay awake during the sessions. Mother admitted that she was under the influence of heroin during "five to eight" visits with the children and the parent aide classes immediately following those visits.

**¶6**  During the period between the first and second day of trial, Mother voluntarily entered a facility to detox from heroin. She also indicated that she had scheduled an appointment for the following week to engage in outpatient substance abuse treatment.

**¶7**  At the end of the two-day trial, the court made findings of fact and conclusions of law on the record. The court found DCS proved the grounds of neglect and chronic substance abuse as to all three children, nine months' time-in-care as to the older two children, and six months' time-in-care as to the youngest. The court also found by a preponderance of the evidence that termination was in the children's best interests. The court ordered DCS to prepare written findings and orders consistent with its findings. The court adopted DCS's proposed findings and conclusions, which were taken largely from DCS's motion to terminate Mother's parental rights.

**¶8**  We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and -2101(A), and Arizona Rules of Procedure for the Juvenile Court 103-104.

## DISCUSSION

**¶9**  To terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven, and it must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶10** Mother does not challenge the statutory grounds for termination; she argues only that the court erred in finding termination was in the children's best interests. "At the best-interests stage of the analysis, 'we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence.'" *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35). Termination is in the child's best interests if the child will benefit from the termination or be harmed if termination is denied. *Id.* at ¶ 13. While the court must consider the totality of the circumstances in the best-interests determination, "'the child's interest in stability and security' must be the court's primary concern." *Id.* at 150-51, ¶¶ 12-13 (citation omitted).

**¶11** In finding termination was in the children's best interests, the court found:

> Termination of the relationship would benefit the children because it would further the plan of adoption, which would provide the children with permanency and stability. The children are residing in an adoptive placement which is meeting all of their needs. The children are considered adoptable and another adoptive placement could be located should the current placement be unable to adopt. Continuation of the parent-child relationship would be a detriment to the children because it would delay permanency, leaving the children to linger in care for an indeterminate period since the children do not have parents who are able to care for them.

**¶12** Mother argues that the evidence presented did not support the court's findings that the children are adoptable and that termination would further the plan of adoption by providing permanency and stability. She further argues that the court's order suggests that the court incorrectly understood that the children were living together and could be adopted together.

**¶13** Mother alleges the only evidence of adoptability is one exchange on the record:

> Q[uestion]: Does the Department believe all of
> the children are adoptable?
>
> A[nswer]: Yeah.

But the case manager also testified that termination would allow the children to be adopted by permanent placements, and, as to the middle child, that his heart condition requires a stable home, so he can qualify for medical treatments, including a potential heart transplant. When asked why the case manager believed the children were adoptable she testified, "their placements absolutely love these kids. They love them, they're attached to them, they've provided them a safe environment. The children love . . . their placements, they love their extended family members that are within those placements." Although the court referenced "an" adoptive placement, rather than multiple placements when describing the children's then-current placements, the court correctly focused on whether the children were adoptable, and there is no requirement that all of the children be adoptable together. The record clearly supports the court's finding that the children are adoptable.

¶14            Mother next argues the evidence does not support the court's finding that denying the motion to terminate would delay permanency because two of the three placements had not indicated an interest in adopting. However, DCS "need not show that it has a specific adoption plan before terminating a parent's rights; [DCS] must show that the children are adoptable." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Although only one placement expressed an interest in adoption, DCS presented evidence that all three children are adoptable. *Id.* Because reasonable evidence supports the finding of adoptability, the court did not err in determining termination would further the plan of adoption.

¶15            Lastly, Mother argues the court's order was factually insufficient. A written termination order must include specific findings of fact that support termination of parental rights. Ariz. R.P. Juv. Ct. 66(F)(2)(a). At a minimum, "the court must specify at least one factual finding sufficient to support each . . . conclusion[] of law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 22 (App. 2012).

¶16            Here, the court adopted DCS's proposed findings of fact and conclusions of law, which repeated verbatim the language in DCS's motion for termination, with only a few additional findings and conclusions. "The primary purpose for requiring a court to make express findings of facts and

conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the [superior] court correctly applied the law." *Id.* at ¶ 24. Although findings that reference evidence specific to the record are of greater assistance to this court as it reviews an order of termination, the court's finding here that the children are adoptable is supported by the evidence and is therefore sufficient.

## CONCLUSION

¶17 We affirm the order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA