NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STEVEN H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.H., *Appellees*.

No. 1 CA-JV 21-0170
FILED 9-21-2021

---

Appeal from the Superior Court in Maricopa County
No.  JD533022
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Ed Johnson, PLLC, Peoria
By Edward D. Johnson
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

¶1            Steven H. ("Father") appeals the superior court's order terminating his parental relationship to his child, M.H.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2            Father and Paola V. ("Mother")[1] are the biological parents of M.H., born September 2018.  The Department of Child Safety ("DCS") received a report the day after M.H. was born that she was showing signs of opiate withdrawal.  Mother admitted to using illicit substances during her pregnancy, and although DCS did not initiate a dependency action at that time, it provided the family with supportive services.  Father alleged he was unaware Mother was using unlawful substances.

¶3            In June 2019, DCS received another report regarding concern that Mother was abusing substances and Father was incarcerated.  DCS confirmed that Father was in prison, but it was unable to substantiate allegations regarding Mother's drug abuse.  Ultimately, DCS closed the report without intervention.

¶4            Father was released from prison in October 2019, but about six weeks later, DCS received a third report regarding Mother abusing substances and exposing M.H. to hazardous environments.  In December 2019, DCS responded to the home and found M.H.'s room covered in rotten food, dirty diapers, trash, and drug paraphernalia.  Father was at Mother's home when DCS responded, and he was aware of the home's condition. Mother admitted to using illegal substances, and Father acknowledged Mother's substance abuse, but denied using illicit substances himself.  DCS removed M.H. from the home and placed her with maternal grandmother.

¶5            DCS initiated a dependency action, alleging M.H. was dependent as to Mother due to substance abuse and neglect.  DCS alleged

---

[1]        Mother is not a party to this appeal.

M.H. was dependent as to Father due to his failure to protect her from Mother's drug abuse and neglect. DCS referred the parents to drug testing, substance-abuse assessments, transportation services, and case aides for supervised visits.

¶6            Soon after, Father was arrested again for armed robbery, and he admitted to police officers that he was addicted to illegal substances. Father was incarcerated in January 2020; at that time he had only completed one drug test and three visits, and he failed to attend his substance-abuse intake appointment. Father was sentenced to four years in prison with a release date in June 2023.

¶7            Mother failed to participate in services and, given Father's incarceration, DCS moved to terminate both parents' parental rights to M.H. in August 2020. Following a termination adjudication hearing, the superior court terminated both parental relationships.

¶8            Father timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

¶9            To terminate a parental relationship, the superior court must make a two-part inquiry. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149-50, ¶ 8 (2018). First, the court must find by clear and convincing evidence at least one of the grounds for termination in A.R.S. § 8-533(B). *Id.* Second, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Id.* "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). Accordingly, we accept the court's factual findings if reasonable evidence supports them and will affirm its termination ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

I.      Statutory Ground

¶10            The superior court terminated Father's parental relationship pursuant to A.R.S. § 8-533(B)(4), which permits termination when a parent has been convicted of a felony "if the sentence of that parent is of such length that the child will be deprived of a normal home for a period of

years." A.R.S. § 8-533(B)(4). The court considers "all relevant factors, including, but not limited to" the following:

> (1) the length and strength of any parent-child relationship existing when incarceration begins, (2) the degree to which the parent-child relationship can be continued and nurtured during the incarceration, (3) the age of the child and the relationship between the child's age and the likelihood that incarceration will deprive the child of a normal home, (4) the length of the sentence, (5) the availability of another parent to provide a normal home life, and (6) the effect of the deprivation of a parental presence on the child at issue.

*Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251-52, ¶ 29 (2000). The record contains reasonable evidence to support the court's decision to terminate the parental relationship.

¶11 Father testified he had a strong relationship with M.H. prior to his incarceration. However, Father's testimony was inconsistent and the court found he lacked credibility. Father testified that he was with M.H. nearly twenty-four hours a day, yet he also testified that while he and Mother were no longer living together, he would drop M.H. off at Mother's for overnight visits "pretty much every day." The DCS case manager testified that Father was not M.H.'s primary caregiver or the residential parent prior to his incarceration. Further, Father was incarcerated from June 2019 to October 2019, and just over a month after his release DCS took custody of M.H. Shortly after, Father was again arrested and has been incarcerated since January 2020. By the time M.H. was one year of age, Father had been incarcerated twice and M.H. had already suffered removal from the home. While it is unclear exactly how often Father parented M.H., the record supports a finding that since her birth Father has had little opportunity to spend time with M.H.

¶12 Father contends that while incarcerated he has shared video and telephone calls with the child, but these only take place twice a month for about fifteen to thirty minutes at a time. Father argues this is sufficient to maintain a parent-child relationship, but the court found "this limited contact is not conducive to forming a strong bond and attachment that a child of this age needs." The DCS case manager testified to reports that M.H. does not recognize Father and that she does not mention him before or after the visits.

¶13        Father argues M.H. is not deprived of a normal home, because she is in a stable home and will continue to remain there. However, the "normal home" referenced in the statute refers to *Father's* "obligation to provide a normal home, a home in which [Father] has a presence, and it does not refer to a 'normal home' environment created by [placement]." *Maricopa Cnty. Juv. Action No. JS-5609*, 149 Ariz. 573, 575 (App. 1986). Father was sentenced to four years in prison, and by the time he is released, Father will have spent over three-fourths of M.H.'s life in prison. The court noted that reunification may further be delayed, because Father would need to address his own substance abuse issues and his inability to protect M.H. from Mother's substance abuse. Because Mother's parental rights were also terminated, there is not another parent to provide a normal home life to M.H. until Father's release. This will deprive M.H. of a normal home life for a significant period of time.

¶14        Finally, Father argues the deprivation of his parental presence has no effect on M.H., because he is currently able to have frequent contact with the child. However, as noted above, the visits are virtual, only take place twice a month, and M.H. does not appear to recognize Father despite these visits. Additionally, the court found, and the record supports, that M.H. is affected by Father's absence because she is forced to rely on others for her basic and emotional needs.

¶15        The court did not err in terminating Father's parental relationship based on his lengthy sentence for a felony conviction.

II.    Best Interests

¶16        Father also argues the superior court erred in finding termination was in M.H.'s best interests. Termination is in a child's best interests if the child will benefit from termination, or the child will be harmed if the court denies it. *Alma S.*, 245 Ariz. at 150, ¶ 13. Evidence of the availability of an adoption plan, a child's adoptability, and that an existing placement is meeting the child's needs supports a finding that the child would benefit from termination of the parental-child relationship. *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 23 (App. 2013); *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994).

¶17        Father contends he "has unconditional love for M.H.," and he has made efforts to communicate with M.H. while in prison. "The existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App.

2016).  Here, however, the strength of Father and M.H.'s bond prior to his incarceration is unclear at best.  And given M.H.'s age, the court found that the limited communication taking place during his incarceration would prevent Father from forming a strong bond and meeting the child's needs.

**¶18**        The court's primary concern is "protect[ing] a child's interest in stability and security."  *Demetrius L.*, 239 Ariz. at 4, ¶ 15 (citation and internal quotation marks omitted).  The court found that the current placement, maternal grandmother, has been meeting the child's needs and provides M.H. with "a safe and stable home free from substance abuse and the attendant instabilities."  Maternal grandmother intends to proceed with adoption, as well.  The court found that M.H.'s placement with a family member "allows the child to maintain relationships with extended family members."

**¶19**        The superior court did not err in finding that termination was in M.H.'s best interests.

## CONCLUSION

**¶20**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA