NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BISONO E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.W., *Appellees*.

No. 1 CA-JV 22-0059
FILED 3-7-2023

Appeal from the Superior Court in Maricopa County
No. JD36969
The Honorable David O. Cunanan, Judge *Retired*

**AFFIRMED**

COUNSEL

Thomas Vierling Attorney at Law, Phoenix
By Thomas Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse, Jr. joined.

---

**P A T O N**, Judge:

**¶1**          Bisono E. ("Father") appeals the superior court's order terminating his parental rights as to I.W.  Father argues the court (1) erred in finding that the Department of Child Safety ("DCS") made diligent efforts at reunification and (2) failed to consider whether another person was willing to be I.W.'s permanent guardian during his incarceration.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          Father and Savanna W. ("Mother") are the biological parents of I.W., who was born in March 2017.  In January 2019, Father was arrested after committing several burglaries and subsequently sentenced to four years in prison.  Mother and Father were later convicted of burglary charges in Texas and sentenced to a maximum of 15 years in prison, to run concurrently with Father's sentence in Arizona.  Father acknowledged that upon his release from prison in Arizona, he will be transferred to Texas to serve additional time.

**¶3**          Five days after Mother and Father's arrest, DCS filed a dependency petition alleging that Mother and Father could not provide proper and effective parental care and control because of their incarceration.  Both parents entered no contest pleas as to the allegations against them in the dependency petition.

**¶4**          In January 2022, DCS moved to terminate Mother and Father's parental rights as to I.W., alleging that both Mother and Father were serving sentences that would deprive I.W. of a normal home for a period of years and that termination was in the child's best interests.  *See* A.R.S. § 8-533(B)(4).

**¶5**          Mother pled no contest to the allegations against her in the termination petition.  Father contested the termination, and after a hearing, the court terminated his parental rights, finding by clear and convincing evidence that Father's sentence was of a sufficient length to deprive I.W. of

a normal home for a period of years and that termination was in the child's best interests.

**¶6**  Father timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 8-235(A). On appeal, Father does not challenge the length of his sentence for termination; he only contests the superior court's normal home and reasonable reunification efforts findings.

## DISCUSSION

**¶7**  Parents have a fundamental right to the care and custody of their children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). But this right is not absolute, and a court may terminate "parental rights under certain circumstances, so long as the parents whose rights are to be severed are provided with 'fundamentally fair procedures' that satisfy due process requirements." *Id.* (citation omitted).

**¶8**  To terminate the parent-child relationship, DCS must prove by clear and convincing evidence at least one statutory ground for termination and prove by a preponderance of the evidence that termination is in the child's bests interests. A.R.S. § 8-537(B); *Kent K.*, 210 Ariz. at 284, ¶ 22. We review a termination order for an abuse of discretion. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021). A court abuses its discretion when it misapplies the law. *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474, ¶ 14 (2022).

## I. Reasonable evidence supports the superior court's finding that DCS made sufficient reunification efforts.

**¶9**  Father argues the court erred in finding that DCS made diligent efforts at reunification. Incarcerated parents "still possess a fundamental liberty interest in the care, custody, and management of their children." *Jessie D.*, 251 Ariz. at 581, ¶ 20; *see also Santosky v. Kramer*, 455 U.S. 745, 753 (1982). DCS, however, is not required "to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS–501904*, 180 Ariz. 348, 353 (App. 1994). Instead, "DCS must make reasonable efforts to provide [reunification] services." *Jessie D.*, 251 Ariz. at 582, ¶ 21.

**¶10**  The record demonstrates that Father sent I.W. approximately forty postcards while incarcerated, and DCS confirmed that I.W. received them. DCS also facilitated one telephonic visit between Father and I.W. in 2020 when Father was unable to receive in-person visits

due to a disciplinary infraction and COVID-19 visitation restrictions implemented by the prison.

¶11        DCS also encouraged Father to participate in services while incarcerated. Indeed, Father participated in AA meetings, the Step Study Program, and the Motivated to Change Program. In July 2020, Father was transferred to Texas to address pending charges, but continued to send I.W. letters. Father returned to Arizona in August 2021 and requested visitation with I.W. DCS again sought and received a visitation order from the court and attempted to provide Father with a case aide to facilitate the visits. But due to a waitlist and because of the pending termination petition, Father did not have any visits with I.W. Nevertheless, on this record, DCS made reasonable efforts to provide Father with reunification services.

**II.     Sufficient evidence supports the superior court's finding that Father's incarceration would deprive I.W. of a normal home.**

¶12        Father next argues the court erred in finding that his sentence will deprive I.W. of a "normal home" under Section 8-533(B)(4) because the court failed to consider whether another person was willing to serve as I.W.'s permanent guardian during Father's incarceration.

¶13        In *Timothy B.*, our supreme court held that before terminating a parent's rights on length-of-incarceration grounds, the superior court must first consider whether another adult is willing to serve as the child's permanent guardian during the parent's incarceration. *Timothy B.*, 252 Ariz. at 477, ¶ 27. If a viable guardian exists, the court must then consider "whether the incarcerated parent [can] contribute to rather than detract from the stable, family environment provided by the permanent guardian during incarceration." *Id.* (interpreting the meaning of "normal home" in A.R.S. § 8-533(B)(4)).

¶14        DCS first contacted I.W.'s maternal great aunt and uncle, both of whom declined to be the child's temporary placement. DCS next contacted two kinship placements in Oklahoma, but Oklahoma determined neither placement option was suitable. DCS then contacted all of I.W.'s known relatives (over fifty) to see if any of them could serve as his temporary placement but none of his relatives responded. It logically follows that if nobody with whom I.W. had a significant relationship was willing to serve as his temporary placement, none of them were available to serve as his permanent guardian. Based on DCS's unsuccessful attempts to find a placement for I.W., the superior court found that I.W. was "not placed with a grandparent or another member of [his] extended family

including a person who has a significant relationship with that child, which is in his best interests, because DCS is unaware of any such person who is willing, able, and/or appropriate to care for the child."

**¶15**      Even if the court failed to consider the availability of a permanent guardian for I.W., termination was still appropriate because the second *Timothy B.* factor is not met here: Father could not contribute to a stable family environment for the child. In *Timothy B.*, the child's father contributed to the stability of his child's environment during his incarceration and made "extraordinary and laudable" efforts to maintain regular contact and a "strong bond" with his child. *Timothy B.*, 252 Ariz. at 473, ¶¶ 7-9. Those efforts included "regular visits" with his child, "helping with homework" and exchanging "cards, gifts, letters, poetry and drawings" with her. *Id.*

**¶16**      Conversely here, Father recognized he could not contribute to a "normal home" environment for I.W. He admitted he did not know his son's exact birthday and age, and that he had no contact with I.W. since his incarceration in 2019. Father testified that, because of his incarceration, he "can't help [I.W.] with nothing" and he did not have a "normal parent/child relationship" with I.W. during his incarceration because he "was never there." Sufficient evidence supports the superior court's finding that Father's incarceration would deprive I.W. of a normal home.

## CONCLUSION

**¶17**      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA