NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.C. and A.B.

No. 1 CA-JV 22-0257
FILED 5-30-2023

Appeal from the Superior Court in Maricopa County
No. JD17268
The Honorable Michael J. Herrod, Judge

**AFFIRMED IN PART: VACATED IN PART**

COUNSEL

John L. Popilek, P.C., Scottsdale
*Counsel for Appellant Mother Shanna B.*

David W. Bell, Mesa
*Counsel for Appellant Father Terry H.*

Thomas A. Vierling, Phoenix
*Counsel for Appellant Father Benjamin C.*

Arizona Attorney General's Office, Phoenix
By Emily Stokes
*Co-Counsel for Appellee Department of Child Safety*

The Huff Law Firm, Tucson
By Laura J. Huff, Daniel R. Huff
*Co-Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Randall M. Howe and Judge Anni Hill Foster joined.

_____

**T H U M M A**, Judge:

¶1            Mother Shanna B. and Fathers Benjamin C. and Terry H. appeal from an order terminating their parental rights to their respective children. Because they have shown no reversible error, the order terminating their parental rights is affirmed. The 15-months time-in-care ground, however, was not properly joined for Benjamin C., and that portion of the order is vacated.

**FACTS AND PROCEDURAL HISTORY**

¶2            Mother and Benjamin C. are the biological parents of J.C., born in 2007 and Mother and Terry H. are the biological parents of A.B., born in 2012. Mother also has an older child, who is now an adult. Since 2004, the Department of Child Safety (DCS) has received many reports of Mother's abuse toward her children that often resulted in visible injuries. Along with alleging Mothers' substantial marijuana use, the reports also detail various events of neglect. As a result of these reports, several dependency petitions have been filed against Mother.

¶3            J.C. lived with Benjamin C. for the first several years of his life. Since 2012, however, Benjamin C. has been in prison for drug-related felony convictions. While in prison, he lost visitation privileges because of disciplinary infractions, and his prison time was extended after he pled guilty to promoting prison contraband. He was released from prison in September 2022, the month before the termination adjudication ended. Terry H. has lived in Kansas City, Kansas, his entire life. Terry H. has had occasional contact with A.B., largely over the phone, with a few in person visits.

¶4            This most recent dependency began in October 2020, when Mother called the police to allege that J.C. was hitting her. When the police arrived, Mother grabbed J.C. to prevent him from getting water from a refrigerator, requiring police to separate them. Mother admitted that, before they arrived, she hit J.C. on the head and bit him, causing him to bleed.

2

Mother was arrested, pled guilty to aggravated assault and was placed on probation for three years. One of the conditions of probation was that Mother have no direct or indirect contact with J.C., absent prior written approval of the probation department.

**¶5** Given Mother's arrest, later in October 2020, DCS filed a dependency petition alleging abuse and neglect by Mother and that behavioral health issues prevented her from effectively parenting her children. The petition alleged J.C. was dependent as to Benjamin C., given he was in prison. The petition alleged A.B. was dependent as to Terry H. based on neglect and failure to maintain a normal parental relationship. Both children were placed with J.C.'s paternal aunt.

**¶6** In January 2021, after Mother entered a no contest plea to the allegations in the petition and both Fathers failed to appear, the children were found dependent, and the court adopted a family reunification case plan. At a September 2021 permanency planning hearing, the court granted DCS' oral motion to change the case plan to severance and adoption. As amended, DCS' motion to terminate alleged abuse, neglect and 15-months time-in-care as to Mother. The motion also alleged abandonment for Benjamin C. and abandonment and 15-months time-in-care for Terry H.

**¶7** At a five-day severance adjudication, ending in October 2022, Mother, Benjamin C., Terry H. and others testified and the court received exhibits and heard argument. After taking the matter under advisement, in a 31-page ruling, the court granted the motion to terminate parental rights. The court found DCS had proven, by clear and convincing evidence, that termination was appropriate as to Mother on the grounds of neglect or failure to protect from neglect, willful abuse or failure to protect from willful abuse and 15-months time-in-care. The court also found that DCS had proven, by clear and convincing evidence, that termination was appropriate for Benjamin C. and Terry H. based on abandonment and 15-months time-in-care. The court also found that granting the motion was in the best interests of the children.

¶8        This court has jurisdiction over each parent's timely appeal under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes (A.R.S.) §§ 8-235(A), 12-120.21(A) and 12-2101(A) (2023) and Ariz. R.P. Juv. Ct. 601-03.[1]

**DISCUSSION**

¶9        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citations omitted). Each parent raises several challenges to the order terminating their parental rights, which this court addresses in turn.

I.        **The Court Did Not Err in Terminating Mother's Parental Rights to A.B. and J.C. on Abuse and Neglect Grounds.**

¶10        Mother argues DCS failed to prove that A.B. was at risk of harm. The court may terminate the parent-child relationship if it finds clear and convincing evidence that "the parent has neglected or wilfully abused a child. This abuse includes serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8-533(B)(2). Termination may extend to non-abused children when the court finds "the risk of harm to non-abused children is proven by clear and convincing evidence." *Sandra R. v. Dep't of Child Safety*, 248 Ariz. 224, 230 ¶ 27 (2020).

¶11        Here, the termination order detailed the abuse that Mother inflicted on J.C., both in the October 2020 incident and in previous incidents. The order also noted that the older child, who is now an adult, was subject to similar abuse. Mother does not challenge these findings but argues that A.B. was not at risk of similar abuse. To support her argument, Mother points to her testimony at trial that her relationship with A.B. is different. Mother argues that, because she has raised A.B., they have a better

_____

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

relationship. Mother's friend also testified that A.B. is easier to parent because she generally does not get upset when disciplined and apologizes. However, Mother's evidence does not negate the court's finding that "Mother's abusive behavior starts as each child gets older and reaches the age when the child is not compliant." Substantial evidence shows that Mother was extremely abusive to J.C. and the older child as they grew older, meaning the court could reasonably conclude that A.B. would be subject to the same abuse over time.

¶12 The record also does not support Mother's argument that A.B. was not abused. Evidence shows that Mother had abused A.B. At trial, Mother conceded that she bit A.B., leaving a bruise. Other evidence showed that A.B. had gone to school a few times with a "busted lip" after Mother had hit her in the face. Based on this evidence, Mother has not shown that the court erred in finding that A.B. was at risk of harm and, as a result, terminating Mother's parental rights. *See Sandra R.*, 248 Ariz. at 231 ¶ 33.

¶13 Mother next argues that DCS failed to provide mandated services, including therapeutic counseling. When terminating a parent's rights on the 15-months time-in-care, the court must "consider the availability of reunification services to the parent and the participation of the parent in these services." A.R.S. § 8-533(D). But DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Nor is it required to "undertake rehabilitative measures that are futile." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶ 34 (App. 1999).

¶14 At the outset of the dependency, DCS recommended that Mother participate in a psychological evaluation, parent aide, parenting classes, and then when appropriate, family counseling. Mother participated in the psychological evaluation, which noted that she was taking medication and recommended weekly counseling, specific training on how to intervene with J.C. and continuing psychiatric evaluations. Mother continued taking medication and participating in counseling for a while, but then declined to do so even though they were recommended. At trial, Mother testified that she stopped taking medication and going to counseling because she felt like she had nothing to work on.

**¶15**          Mother could not have contact with J.C. based on the terms of her probation. DCS offered Mother supervised visits with A.B., until A.B. refused them. Mother also did not participate in recommended parenting classes. And A.B.'s counselor did not believe that she was ready for family counseling. Although Mother sought family counseling, she did not show she was improving in her ability to parent. Given that Mother stopped participating in services, the court did not err in determining DCS has met its obligation to provide appropriate reunification services. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. at 353.

**¶16**          For these reasons, Mother has shown no error in the order terminating her parental rights to both J.C. and A.B.

## II.    The Court Did Not Err in Terminating Terry H.'s Parental Rights on Abandonment.

**¶17**          Abandonment is defined as a "failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). "[A]bandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J.*, 196 Ariz. at 249–50 ¶ 18.

**¶18**          Terry H. argues the evidence does not support abandonment. He cites his testimony that he had regular contact with A.B. before DCS filed the dependency petition. But Terry H. also testified that he did not know about the dependency petition until six months to a year after it was filed and could not explain how he could have had consistent contact with A.B. during that time yet not know about the petition. Terry H. conceded that he had never provided financial support for A.B. The placement testified that, since October 2020, Terry H. called maybe ten times for three to four minutes each and each call was awkward, suggesting A.B. did not have a relationship with him before the dependency. The DCS case manager also testified that Terry H. failed to show up to the one in-person visit he scheduled with A.B. during the dependency. His alleged contact

with A.B. years ago does not rebut the court's finding that he failed to maintain a normal parental relationship and support his child.[2]

**¶19**        Terry H. also challenges the court's best interests findings based on the argument that the court erroneously found the ground of termination. As explained above, the court did not err in its abandonment determination. Nor has Terry H. shown that termination would not be in A.B.'s best interests. "[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). As the court found, the placement meets A.B.'s needs in providing stability and permanency and would allow her to stay with her sibling. Although Terry H. argues that he has been able to parent other children, at trial he was evasive about his current living situation. Therefore, Terry H. has not shown that the court erred in finding that termination would be in A.B.'s best interests.

### III.    The Court Did Not Err in Terminating Father Benjamin C.'s Parental Rights to J.C.

**¶20**        Benjamin C. argues the court erred in finding he abandoned J.C. As noted above, abandonment occurs when there is a "failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision." A.R.S. § 8-531(1). While abandonment should be looked at in the proper context, "incarceration alone . . . does not justify a failure to make more than minimal efforts to support and communicate with his child." *Michael J.*, 196 Ariz. at 250 ¶ 21. If "circumstances prevent the . . . father from exercising traditional methods of bonding with his child, he must act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Id.* at 250 ¶ 22 (citation omitted).

---

[2] Given this finding, this Court need not (and expressly does not) address Terry H.'s arguments challenging the 15-months time-in-care ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

¶21        The court found that Benjamin C. had been in prison most of J.C.'s life, and nearly all the time since J.C. was four years old. The court also found that, instead of "doing everything that he could to get out" of prison, Benjamin C. "committed acts that causes him to spend additional time in prison." He also took actions in prison that caused him to lose visitation privileges. The placement testified that she received one email directed to J.C. during the dependency and received no financial assistance.

¶22        Benjamin C. does not challenge these findings but argues that DCS failed to set up visitation with J.C. The record does not support his argument, however. As the court found, DCS tried to set up visitation but could not because Benjamin C. had often lost his visitation privileges because of his own infractions while in prison. Additionally, nothing stopped Benjamin C. from sending J.C. cards, gifts or letters, or doing other things to show that he was "act[ing] persistently to establish the relationship however possible." *Michael J.*, 196 Ariz. at 250 ¶ 22. The court thus did not err in terminating Father's rights based on abandonment.[3]

¶23        Benjamin C. argues that the court erred in its best interests finding because the court failed to require DCS to implement a permanent guardianship before seeking termination. Although parents have a "fundamental right" to "direct the upbringing, education, health care and mental health of their children," A.R.S. § 1-601, a dependent child has an interest in stability and security that "must be the court's primary concern," *Alma S.*, 245 Ariz. at 150 ¶ 12. "The juvenile court must not subordinate the interests of the child to those of the parent once a determination of unfitness has been made." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478 ¶ 32 (2022) (citation omitted).

¶24        When applicable, a permanent guardian may be an appropriate (and preferred) alternative to termination of parental rights; a permanent guardian is not, however, a prerequisite to termination, particularly where no ready, willing and able potential guardian has been identified. *See Timothy B.*, 252 Ariz. at 477 ¶ 28; A.R.S. § 8-533. Benjamin C. identifies no such potential guardian here, meaning the court did not err in addressing such an alternative when granting severance.

---

[3] Benjamin C. argues that the court erred in also finding termination was proper on 15-months time-in-care. He is correct that DCS did not properly allege this ground. Accordingly, although affirming on the statutory ground of abandonment, this court vacates the 15-months time-in-care finding.

¶25        The placement has been able to provide safety and security and is willing to adopt the children. J.C. shares this desire. Severance and adoption will allow J.C. to continue in the placement's stability and security rather than the possibility of changing homes again under a permanent guardianship. Thus, Benjamin C. has not shown that the court erred in rejecting his request for a permanent guardianship. Nor has he shown that the court erred in finding that termination was in J.C.'s best interests because he "would be allowed to remain in the home [he has] been in, free of abuse and neglect, and with permanency." *See Alma S.*, 245 Ariz. at 150 ¶ 13 ("[T]ermination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied.").

## CONCLUSION

¶26        The 15-months time-in-care ground was not properly joined for Benjamin C., and that portion of the order terminating parental rights is vacated. In all other respects, the order terminating parental rights is affirmed.

