NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO V.C., I.C., D.C., C.C., E.C., J.C., and A.C.

No. 1 CA-JV 24-0038

FILED 07-23-2024

---

Appeal from the Superior Court in Maricopa County
No. JD534188
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Mesa
By Ingeet P. Pandya
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Andrew M. Jacobs joined.

---

**T H U M M A**, Judge:

¶1            Sandra M. (Mother) appeals from an order terminating her parental rights to seven of her biological children on substance abuse and time-in-care grounds. Mother argues the Department of Child Safety (DCS) did not make diligent reunification efforts and that termination was not in the best interests of one of her children. Because Mother has shown no reversible error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2            Mother is the biological parent of V.C., I.C., D.C., C.C., E.C., J.C., and A.C. Both before and during the dependency proceedings, Mother has struggled with substance abuse, at one point admitting to using fentanyl every other day for an extended period of time. Father of the five eldest children passed away in 2017. The father of J.C. and A.C. had his parental rights terminated and is not a part of this appeal. In May 2021, DCS received a report that, in the presence of V.C., Mother's significant other shot three rounds from his gun into the air during a disagreement. The police were called and both Mother and her significant other were arrested for possession of illegal drugs and drug paraphernalia.

¶3            In July 2021, DCS took temporary custody of the children and filed a dependency petition alleging, as to Mother, neglect, ongoing substance abuse, and history of domestic violence. During the dependency proceedings, in October 2021, Mother tested positive for fentanyl after J.C. was born. A.C. was born exposed to fentanyl in November 2022. J.C. and A.C. had been placed in foster care while I.C. and the remaining four children were in familial placements. The court found the children dependent as to Mother in February 2022, adopting a family reunification case plan and ordering services.

¶4            During the dependency, DCS offered Mother various reunification services, including case management, parenting classes, parenting time, substance abuse treatment, drug testing, and transportation. Mother minimally engaged in these services. She did not drug test, and her referrals for substance abuse treatment through Terros and supervised visitation through the Nurturing Parent Program (NPP) lapsed when she failed to participate. DCS renewed Mother's referrals to each service many times to no avail; services were repeatedly suspended given Mother's failure to participate.

¶5            In November 2023, after the dependency had been pending for more than two years, the superior court changed the case plan to severance and adoption. DCS moved to terminate alleging substance abuse

and time-in-care statutory grounds, also alleging that termination was in the best interests of the children. The court held a one-day termination adjudication in February 2024, where Mother and others testified. The DCS case manager testified to the services provided to Mother and her failure to engage in, and benefit from, those services. Mother contended DCS failed to make a diligent effort to provide her appropriate reunification services and asserted that she was managing her substance abuse through methadone treatments.

¶6 Later in February 2024, after taking the matter under advisement, the court granted the motion to terminate. The court found DCS had proven by clear and convincing evidence the statutory grounds alleged, and by a preponderance of the evidence that termination was in the best interests of the children. The court also found DCS made reasonable and diligent efforts to provide Mother with appropriate reunification services. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Ariz. Rev. Stat. (A.R.S.) §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 601-03 (2024).[1]

## DISCUSSION

¶7 As applicable here, to terminate parental rights a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

## I.     The Superior Court Did Not Err in Finding DCS Made a Diligent Effort to Provide Appropriate Reunification Services.

¶8 Mother argues the superior court erred in finding DCS made a diligent effort to provide appropriate reunification services, one of the four required showings for termination based on 15-months time-in-care.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

*See* A.R.S. § 8-533(B)(8)(c). The court must "consider the totality of the circumstances when determining whether DCS has made diligent efforts." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 49 (App. 2019). At a minimum, DCS must "identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* at 23 ¶ 50 (citation omitted).

¶9        As noted long ago, this obligation requires DCS to provide a parent with services and "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). However, DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* "The purpose of providing reunification services is to afford a parent 'the time and opportunity to participate in programs designed to improve the parent's ability to care for the child.' Such efforts also enable [DCS] to evaluate a parent's progress, or lack thereof, toward making reunification possible." *Jordan C.*, 223 Ariz. at 94 ¶ 31 (internal citation omitted). The record supports the court's finding that DCS made a diligent effort to provide Mother with appropriate reunification services.  *See* A.R.S. § 8-533(B)(8) ("That the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency, that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services and that one of the following circumstances exist.")

¶10        From July 2021 to February 2024 -- more than two and a half years -- DCS offered Mother supervised visits and case-management services to help her participate in, and benefit from, services. DCS also referred Mother to Terros for substance abuse treatment, to another entity for drug testing, to NPP for education and parenting skills, and for domestic violence counseling. On appeal, Mother argues the services were inadequate because "DCS (1) failed to provide visitation during a portion of the reunification attempt, (2) failed to help mother obtain domestic-violence counseling during a portion of the reunification attempt, and (3) failed to verify or request documentation of housing and employment." She argues that "DCS withheld visitation during a portion of the reunification attempt simply because a contractor was not available to supervise visitation" and that "reasonable evidence does not support the court's

conclusion that DCS made a diligent effort to reunify Mother with her children." The trial record shows otherwise.

¶11　　　The DCS case manager testified that "[she] emailed [Mother domestic violence service] information several times, [] offered to call together when [she] was in person. [And] [] gave her several resources, including Chicanos Por La Causa." Despite claiming she engaged in domestic violence counseling, there was no evidence that Mother contacted Chicanos Por La Causa or engaged in services. A prior DCS case manager testified that Mother did not provide DCS documentation of stable employment, nor did she allow DCS to assess her living situation. Mother also failed to engage in other services provided by DCS. Among other things, the trial evidence shows Mother missed more than a dozen drug tests between late September 2023, and late January 2024, and tested positive for fentanyl as recently as early December 2023.

¶12　　　Other testimony regarding Mother's chronic addiction to fentanyl and lack of participation in services properly supported the court's conclusion that "[Mother] has not established any period of sobriety through testing," "she has also failed to complete domestic violence counseling, closed out of prior referrals for parenting classes, and has not provided proof of stable housing or income." Despite Mother's last-minute effort to engage in services just before the severance trial, the court further found that "there is a substantial likelihood Mother will not be capable of exercising proper and effective parental care and control in the near future."

¶13　　　For more than two and a half years, DCS offered Mother numerous services, including five referrals to Terros substance abuse treatment, eight referrals to parent-aide services through the NPP, four referrals for a case aide and nine referrals for supervised visits. Despite these services, Mother asserts that "DCS failed to provide specific, necessary services." The trial record, however, shows DCS provided Mother ample opportunities to engage in reunification efforts. Moreover, DCS is "not required to . . . ensure that a parent participates in each service it offers." *Juv. Action No. JS-501904*, 180 Ariz. at 353. On this record, the court properly could find DCS made a diligent effort to provide appropriate reunification services and that "Mother has failed to engage in those services in a meaningful way." Thus, Mother has not shown DCS failed to make diligent efforts to provide appropriate reunification services or that the court erred in finding that DCS had provided appropriate services.

## II. The Superior Court Did Not Err in Finding Termination Was in I.C.'s Best Interests.

¶14 Mother argues that the superior court abused its discretion in finding that termination was in the best interests of I.C. "Termination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Id*. at 148 ¶ 1.

¶15 The superior court found the children would benefit from termination because "it would further the plan of adoption, which would provide the children with permanency and stability." As to I.C., the superior court noted that termination was in the best interests of the child because "Mother would not be able to tend to [I.C's] behavioral and mental health needs at this time or any time in the near future." On appeal, Mother's argument focuses on the fact that "DCS had [not] (1) found anyone willing and able to adopt I.C., or (2) could do so within a meaningful period of time." However, the superior court found that I.C. is adoptable as defined in *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370-71 ¶¶ 19-24 (App. 2018). "It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Alma S.*, 245 Ariz. at 150 ¶ 13 (2018) (quoting *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016)). Trial evidence supports the finding that I.C. would benefit from termination because she is currently in a placement that is able to provide for both her basic needs and special needs and is "adoptable." For these reasons, Mother has not shown the court abused its discretion in finding that severance is in I.C.'s best interests.

## CONCLUSION

¶16 The order terminating Mother's parental rights to V.C., I.C., D.C., C.C., E.C., J.C., and A.C. is affirmed.

